FILED
United States Court of Appeals
Tenth Circuit

April 29, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

FRANCIS EFAGENE,

        Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

        Respondent.

No. 10-9546

---

**PETITION FOR REVIEW OF A DECISION FROM
THE BOARD OF IMMIGRATION APPEALS**

---

Kevin E. McReynolds, Jin, Schauer & Saad, LLC, Denver, Colorado, for
Petitioner.

Lauren E. Fascett, Trial Attorney (Anthony C. Payne, Senior Litigation Counsel,
with her on the brief), Office of Immigration Litigation, Civil Division, U.S.
Department of Justice, Washington, D.C., for Respondent.

---

Before **MURPHY**, **HARTZ**, and **O'BRIEN**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I.   Introduction

Francis Efagene petitions for review of a final order of removal issued by the Board of Immigration Appeals ("BIA").  Efagene argues the BIA erred in concluding that the Colorado misdemeanor offense of failure to register as a sex offender constitutes a crime involving moral turpitude under the Immigration and Nationality Act ("INA").  Exercising jurisdiction under 8 U.S.C. § 1252, this court **GRANTS** the petition for review, **REVERSES** the decision of the BIA, and **VACATES** the order of removal.

## II.   Background

Efagene, a citizen of Nigeria, was admitted to the United States as a lawful permanent resident in 1991.  In 2005, Efagene pleaded guilty to a Colorado state misdemeanor offense of sexual conduct-no consent, in violation of Colo. Rev. Stat. § 18-3-404.  He was sentenced to 364 days' imprisonment, which was satisfied with time served, and ordered to register as a sex offender for the next ten years.  In 2007, Efagene failed to meet a registration deadline and was arrested.  He pleaded guilty to a misdemeanor failure-to-register offense, in violation of Colo. Rev. Stat. § 18-3-412.5(1)(a), (3), and was sentenced to thirty days' imprisonment and a $100 fine.

The U.S. Department of Homeland Security ("DHS") served upon Efagene a Notice to Appear charging him as removable under 8 U.S.C. § 1227(a)(2)(A)(ii) for having been convicted of two crimes involving moral turpitude.  The two

convictions on which DHS based Efagene's removability were the sexual

conduct-no consent and failure-to-register offenses described above.  Efagene

challenged his removability before an Immigration Judge ("IJ"), arguing failure to

register does not constitute a crime involving moral turpitude.  The IJ disagreed

and ordered Efagene removed.  In an unpublished order, the BIA affirmed the IJ's

decision and dismissed the appeal.  Efagene then petitioned for review and this

court stayed his removal order pending resolution of the petition.

## III.  Discussion

The parties first dispute whether this court must defer to the BIA decision

in this case according to the principles announced in *Chevron U.S.A., Inc. v.*

*Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  Under *Chevron*, a

court gives deference to an agency's interpretation of a statute Congress charged

it with administering if the statute is silent or ambiguous on the question at hand

and the agency's interpretation is not arbitrary, capricious, or manifestly contrary

to the statute.  *Carpio v. Holder*, 592 F.3d 1091, 1096 (10th Cir. 2010).

An agency interpretation only qualifies for deference, however, when the

agency acted in its "lawmaking pretense."  *United States v. Mead Corp.*, 533 U.S.

218, 233 (2001).  When the interpretation occurs in an adjudication, the agency

acts in a lawmaking capacity if the decision is binding precedent within the

agency.  *Carpio*, 592 F.3d at 1097.  It is undisputed that the BIA's unpublished

decision in this case is not precedential within the agency.  *See* 8 C.F.R.

-3-

§ 1003.1(g) (outlining the procedure for creating published BIA precedent). Nonetheless, *Chevron* deference may apply to a nonprecedential BIA decision if it relies on prior BIA precedent addressing the same question. *Carpio*, 592 F.3d at 1097.

The BIA argues its decision here is eligible for *Chevron* deference because the decision relies on a prior published decision, *In re Tobar-Lobo*, 24 I. & N. Dec. 143, 146 (BIA 2007), in which the BIA concluded an offense under the California failure-to-register statute constitutes a crime involving moral turpitude. The BIA further contends the decision in this case is entitled to deference under the *Chevron* standard because it is a reasonable interpretation of moral turpitude under the INA, a statute it is charged to administer.

As an initial matter, the BIA is owed no deference to its interpretation of the substance of the state-law offense at issue, as Congress has not charged it with the task of interpreting a state criminal code. *See Marmolejo-Campos v. Holder*, 558 F.3d 903, 907 (9th Cir. 2009) (en banc). Any deference due would apply only to the BIA's interpretation of the INA provision concerning crimes involving moral turpitude as applied to the state substantive offense. Nonetheless, even if the BIA's decision here were eligible for *Chevron* deference because it applied prior BIA precedent, *Chevron* cannot help the BIA in this case. For the reasons described below, the BIA's interpretation of moral turpitude to reach so far as to

-4-

encompass the Colorado misdemeanor offense of failure to register is not a "reasonable policy choice for the agency to make." *Chevron*, 467 U.S. at 845.[1]

To determine if a particular conviction under state law meets the definition of an offense for which a noncitizen may be removed under the INA, the elements of the state-law offense are first analyzed using the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575 (1990). *See Marmolejo-Campos*, 558 F.3d at 912 (applying *Taylor* to analyze whether a conviction qualifies as a crime involving moral turpitude under the INA); *see also Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 186-87 (2007) (same for theft offense).[2] Under the categorical approach, this court looks only to the statutory definition of the offense and not to the underlying facts of the conviction to determine whether the offense involves moral turpitude. *See Taylor*, 495 U.S. at 600.

---

[1]For the same reason, the BIA's decision is not entitled to *Skidmore* deference, as a court only defers under *Skidmore* when the agency decision has the "power to persuade." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

[2]Although the Attorney General has set forth a framework for the moral turpitude analysis which departs in some respects from *Taylor*, that departure concerns how to apply the modified categorical approach. *In re Silva-Trevino*, 24 I. & N. Dec. 687, 700 (Op. Att'y Gen. 2008). As described below, the modified categorical approach, a step taken only if the categorical approach does not end the inquiry, is not called for in this case. As to the categorical approach, the Attorney General expressly adopted the analysis in *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007), in which the Supreme Court applied *Taylor* in the immigration context. *See Silva-Trevino*, 24 I. & N. Dec. at 697-98. Accordingly, *Silva-Trevino* does not alter the nature of the categorical analysis long employed by the courts.

"Moral turpitude refers to conduct which is inherently base, vile, or depraved, contrary to the accepted rules of morality and duties owed between man and man, either one's fellow man or society in general." *Wittgenstein v. INS*, 124 F.3d 1244, 1246 (10th Cir. 1997) (quotation omitted). As the BIA has held, for an offense to involve moral turpitude, it must require a reprehensible or despicable act. *In re Silva-Trevino*, 24 I. & N. Dec. 687, 706 (Op. Att'y Gen. 2008). Moral turpitude reaches conduct that is inherently wrong, or *malum in se*, rather than conduct deemed wrong only because of a statutory proscription, *malum prohibitum*. *Plasencia-Ayala v. Mukasey*, 516 F.3d 738, 747 (9th Cir 2008), *overruled on other grounds by Marmolejo-Campos*, 558 F.3d at 911; *see also In re Flores*, 17 I. & N. Dec. 225, 227 (BIA 1980). A crime of moral turpitude, moreover, necessarily involves an evil intent or maliciousness in carrying out the reprehensible act. *Flores*, 17 I. & N. Dec. at 227.

The Colorado statute under which Efagene was convicted defines the offense as "failure to register pursuant to article 22 of title 16, C.R.S."[3] Colo. Rev. Stat. § 18-3-412.5(1)(a). In turn, article 22 enumerates the requirements of registration, including that individuals convicted of a qualifying sex offense register with local law enforcement in each jurisdiction where they reside, that

---

[3]Although failure to register can be either a misdemeanor or a felony offense under the Colorado statute, the relevant offense here is a misdemeanor because Efagene's prior sexual offense giving rise to a registration obligation is itself a misdemeanor. *See* Colo. Rev. Stat. § 18-3-412.5(3).

they complete their initial registration within five business days of being released from incarceration, that they reregister annually on or within one business day of their birthdays, and that they register within five business days of establishing any new residence.  *See id.* § 16-22-108.

Here, the BIA concluded Colorado's failure-to-register statute defined an offense categorically constituting a crime involving moral turpitude by relying on the BIA's prior precedential decision in *Tobar-Lobo*.  In *Tobar-Lobo*, the BIA considered a conviction under California's similar statute.  24 I. & N. Dec. at 143-44.  In concluding the California failure-to-register offense is a crime involving moral turpitude, the BIA relied heavily on the principal purpose of the statute, which it described as "safeguard[ing] children and other citizens from exposure to danger from convicted sex offenders."  *Id.* at 146.  It reasoned, "Given the serious risk involved in a violation of the duty owed by this class of offenders to society, we find that the crime is inherently base or vile and therefore meets the criteria for a crime involving moral turpitude."  *Id.*  Although the BIA recognized regulatory offenses typically do not involve moral turpitude, the BIA concluded failure to register as a sex offender fell within an exception to that rule because "some obligations . . . are simply too important not to heed" and failing to register as a sex offender breached a duty to society that rendered it a "despicable" act.  *Id.* at 146-47.

The conclusion that failing to register is one of the exceptional regulatory offenses classified as crimes involving moral turpitude is not supported by the cases cited by the BIA in *Tobar-Lobo*. As noted by the BIA, the crimes of statutory rape, child abuse, and spousal abuse are considered crimes involving moral turpitude. *Id.* at 145. Those crimes, however, are inherently different from failing to register because in each of those instances, the crime necessarily involves an actual injured victim. Child abuse, for instance, is a crime involving conduct society deems to be wrong independent of any statutory prohibition precisely because of the harm it causes. Here, as the Ninth Circuit has stated, failing to register as a sex offender does not, as a categorical matter, involve an identifiable victim, any actual harm, or any intent to cause harm. *Plasencia-Ayala*, 516 F.3d at 748.

The *Tobar-Lobo* interpretation of moral turpitude is, moreover, at odds with the BIA's own longstanding precedent. "An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is entitled to considerably less deference than a consistently held agency view." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 n.30 (1987) (declining to defer to BIA's interpretation of "well-founded fear"). Failing to register as a sex offender is analogous not to child and spousal abuse, but rather to other crimes of omission concerning filing, reporting, and licensing requirements, which are regulatory offenses. As the BIA has stated, "We have many times held that the violation of

-8-

a regulatory, or licensing, or revenue provision of a statute is not a crime involving moral turpitude." *In re Abreu-Semino*, 12 I. & N. Dec. 775 (BIA 1968).

In *In re L-V-C-*, the BIA considered whether the federal crime of structuring currency transactions to evade reporting requirements is a crime involving moral turpitude. 22 I. & N. Dec. 594, 594 (BIA 1999). There, the BIA relied heavily on *United States v. Bajakajian*, 524 U.S. 321 (1998), which characterized the severity of similar financial reporting crimes as merely depriving the government of information required by law but not involving a concrete injury. *L-V-C-*, 22 I. & N. Dec. at 600-01. Recognizing the *Bajakajian* characterization as persuasive, the BIA concluded the statute encompassed even "benign nonreporting which would not impair Government functions" and could not be categorically considered a crime involving moral turpitude. *Id.* at 603.

The principle that regulatory crimes do not involve moral turpitude is not new to the BIA. As early as 1943, the BIA held a violation of a statute requiring liquor retailers to pay a tax was "merely a revenue or licensing statute." *In re H-*, 1 I. & N. Dec. 394, 395 (BIA 1943). "The fact that the thing may be done, provided a tax is paid to the Government, indicates that the act itself does not involve moral turpitude." *Id.* In contrast, where a crime involves affirmative actions taken with the intent to mislead the government, it may involve moral turpitude. *See In re Jurado-Delgado*, 24 I. & N. Dec. 29, 35 (BIA 2006).

Courts of appeals likewise have declined to consider regulatory offenses of omission concerning reporting and licensing as crimes involving moral turpitude. In *Cerezo v. Mukasey*, the Ninth Circuit reasoned that the failure to provide a vehicle registration number at the scene of an accident is not base, vile or depraved. 512 F.3d 1163, 1167 (9th Cir. 2008). Even though the statute was broadly intended to prevent an individual from escaping liability with respect to the accident, the statute on its face employed a reporting requirement the conviction for which did not require any attempt to evade liability. *Id.* at 1168-69; *cf. Garcia-Maldonado v. Gonzales*, 491 F.3d 284 (5th Cir. 2007) (holding crime of failure to stop and render aid after being in an accident involves moral turpitude because it is intrinsically wrong and inherently involves the attempt to evade responsibility).

Similarly, the Seventh Circuit concluded the unlicensed sale of firearms was in the category of acts considered wrong only because they are statutorily proscribed for regulatory purposes rather than intrinsically wrong. *Ali v. Mukasey*, 521 F.3d 737, 741 (7th Cir. 2008). The court explained there is "nothing inevitable about the current [firearm licensing] rules," firearms licensing requirements are relatively new, and even though firearms and their misuse are dangerous, the failure to follow firearm-licensing requirements does not pose an inherently high risk to society. *Id.* Although the Seventh Circuit concluded the conviction at issue in that case was a crime involving moral turpitude on the

alternate grounds of involving fraud, it rejected the BIA's contention that the licensing violation involved inherently depraved conduct. *Id.* at 740-41, 743.

Colorado's own courts have described the sex offender registry statute at issue here as regulatory in nature. In *Jamison v. People*, the Colorado Court of Appeals considered a convicted sex offender's *ex post facto* challenge to the sex offender registry requirements as applied to offenders convicted prior to enactment. 988 P.2d 177 (Colo. App. 1999). The court explained a law withstands *ex post facto* challenge if the legislative intent in enactment is regulatory rather than penal. *Id.* at 180. Concluding the legislature "did not intend the registration requirement to inflict additional punishment on a person" but instead is "remedial" and designed to aid in law enforcement, the court rejected the *ex post facto* challenge. *Id.*; *see also Smith v. Doe*, 538 U.S. 84, 96 (2003) (rejecting *ex post facto* challenge to Alaska's sex offender registry statute and describing the registry statute as a civil "regulatory scheme" enforced by criminal penalties).

An examination of the statute's requirements also confirms its regulatory nature. While there is no question a sex offense itself often involves serious harm to the victim and constitutes a depraved act, an individual can be convicted of failure to register if he, for example, changes residences and notifies law enforcement six rather than five business days later. This type of conduct is not conduct society deems inherently base, vile, or depraved, but rather is wrong only

because a statute requires the action be taken within five business days. Indeed, changing residences without notifying law enforcement creates risk only in the most generalized fashion. Similar to the failure to obtain a license to sell firearms at issue in *Ali*, the failure to meet sex offender registration requirements is not an omission that carries an inherently high risk. *See* 521 F.3d at 740. Also akin to the licensing requirements in *Ali*, there is nothing "inevitable" about the sex offender registry laws as they exist today. *See id.* The relatively recent emergence of sex offender registry statutes further underscores that these statutes proscribe acts not considered by society as *malum in se*. *See Smith*, 538 U.S. at 97 (explaining that a survey of state laws reveals that sex offender registry statutes are of fairly recent origin). In short, as the Ninth Circuit explained, "it is the sexual offense that is reprehensible, not the failure to register." *Plasencia-Ayala*, 516 F.3d at 748.

The BIA's comparison of failure to register as a sex offender to driving under the influence does not support its position. *Tobar-Lobo*, 24 I. & N. Dec. at 147. First, the BIA's contention that driving under the influence is a crime involving moral turpitude is based on Ninth Circuit dicta stating only that the act of drunk driving is despicable. *See Hernandez-Martinez v. Ashcroft*, 329 F.3d 1117, 1119 (9th Cir. 2003). The BIA's own precedential decision in *In re Lopez-Meza* notes that "[t]he absence of [relevant case law] suggests a long historical acceptance that a simple DUI offense does not inherently involve moral turpitude,

and we are not persuaded to conclude otherwise." 22 I. & N. Dec. 1188, 1194 (BIA 1999). Moreover, the reason driving under the influence is not a crime involving moral turpitude is not that it lacks reprehensibility, but because it lacks any mens rea requirement. *Marmolejo-Campos*, 558 F.3d at 913 (describing drunk driving offenses as strict liability crimes and holding only that *aggravated* offenses under an Arizona statute, which have additional scienter requirements, can constitute crimes involving moral turpitude). In short, driving while under the influence has neither been deemed a crime involving moral turpitude nor is aptly compared to failure to register as a sex offender and therefore cannot provide a principled rationale for the BIA's decision in *Tobar-Lobo*.

The government's citation to Colorado's statutory provision concerning "extraordinary risk crimes," which includes the failure-to-register offense at issue here, does not bear on the matter. Colo. Rev. Stat. § 18-1.3-501(3)(b)(V). The extraordinary risk designation serves merely as a six-month sentencing enhancement for a certain group of listed misdemeanors. *See id.* It is well-established that whether a crime involves moral turpitude does not turn on the severity of the sentence imposed. *In re Tran*, 21 I. & N. Dec. 291, 293 (BIA 1996). Similarly unhelpful is the government's reliance on *People v. Lopez*, in which the Colorado Court of Appeals concluded that the felony failure-to-register offense under Colorado law included a mental state of "knowingly." 140 P.3d 106, 113 (Colo. App. 2005). Even assuming the holding in *Lopez* applies equally

-13-

to the misdemeanor failure-to-register offense,[4] merely having knowledge as an element of the offense does not convert a regulatory crime into a crime involving moral turpitude under the BIA's own precedent because even if there were the requisite intent, it is not an intent to commit a reprehensible act. For instance, in *In re H-*, despite the knowing requirement in the statute governing the regulatory offense, the BIA concluded the offense did not involve moral turpitude. 1 I. & N. Dec. at 394-96. Thus, a knowing violation of a regulatory statute not involving an inherently despicable act is still insufficient to constitute a crime involving moral turpitude.

The BIA's interpretation of moral turpitude in *Tobar-Lobo* is unreasonable for the additional reason that the rationale for the decision could apply to any and every criminal infraction. Any obligation on which society has placed a threat of imprisonment for failure to comply can be characterized as "too important not to heed," as the BIA said of the obligation to register as a sex offender. 24 I. & N. Dec. at 146. Moreover, as the dissent in *Tobar-Lobo* correctly pointed out, "the breach of any and every law can be said to violate the duties owed between persons or to society in general." *Id.* at 149 (Filppu, Bd. Member, dissenting).

---

[4]As a basis for concluding the statute, although silent as to any mens rea requirement, has an implied mental state requirement of "knowingly," the court relied heavily on the seriousness of the felony failure-to-register offense and the severity of the associated penalties. *See People v. Lopez*, 140 P.3d 106, 111-12 (Colo. App. 2005). Because that rationale does not apply with equal force to a misdemeanor failure-to-register offense, there is reason to question whether the holding in *Lopez* applies to misdemeanor offenses under the registry statute.

-14-

The BIA's construction of moral turpitude in this regard is not a permissible reading of the INA, which renders removable a noncitizen who is "convicted of two or more crimes involving moral turpitude." 8 U.S.C. § 1227(a)(2)(A)(ii). Were moral turpitude to reach any breach of duty to society, or the failure to meet any obligation "too important not to heed," the words "moral turpitude" would be rendered superfluous and a noncitizen would be removable if convicted of "two or more crimes" of any kind. *See Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1071 (9th Cir. 2007) (en banc) ("It is apparent that the [Immigration Judge's] definition of moral turpitude is overbroad because under his definition, all crimes would be crimes of moral turpitude."). The decision in *Tobar-Lobo* accordingly fails to give meaning to the words "moral turpitude" and conflicts with longstanding decisions of the BIA itself and of the circuit courts. Colorado's misdemeanor failure-to-register offense is not a crime involving moral turpitude as a categorical matter.

The government urges that if Colorado's misdemeanor failure-to-register offense is not categorically a crime involving moral turpitude, we must remand the matter to the BIA for consideration of Efagene's crime under the modified categorical approach. Such a remand, however, is not called for in this case. The modified categorical approach is employed when some conduct encompassed within the statute is morally turpitudinous and other conduct is not. *See Vargas v. Dep't of Homeland Sec.*, 451 F.3d 1105, 1109 (10th Cir. 2006). In those

-15-

instances, a court may look to charging documents and other evidence to determine whether the individual was convicted of violating the statute in a manner involving moral turpitude. *See id.*

Here, although there are various ways of violating the statute, none of them involve an inherently base, vile, or depraved act. For instance, an individual can violate the statute by failing to register on or within one business day of his birthday. Colo. Rev. Stat. § 16-22-108(1)(b). Alternatively, an individual can be convicted of failure to register if he changes residences and does not notify law enforcement within five business days. *Id.* § 16-22-108(1)(c). An individual may also be found guilty of failure to register if he does not complete his initial registration within five business days of being released from imprisonment. *Id.* § 16-22-108(1)(a). For the reasons explained above, none of these ways of violating the statute involve a reprehensible act as is necessary for classification as a crime involving moral turpitude. Accordingly, the categorical approach here ends the inquiry.[5]

---

[5]This ruling is consistent with the Attorney General's decision in *Silva-Trevino*, which recognized that the modified categorical approach is necessary only when "the categorical analysis does not end the moral turpitude inquiry." 24 I. & N. Dec. at 698. *Silva-Trevino* further explained there is no reason to proceed to this second stage where, as here, "none of the circumstances in which there is a realistic probability of conviction involves moral turpitude." *Id.* at 698 n.2. Accordingly, this court need not address whether the framework established by the Attorney General in *Silva-Trevino* as to the modified categorical approach is a reasonable interpretation of the INA. *See Jean-Louis v. Attorney General*, 582 F.3d 462 (3d Cir. 2009) (rejecting *Silva-Trevino* as an unreasonable agency

(continued...)

## IV.    Conclusion

For the forgoing reasons, the petition for review is **GRANTED**, the decision of the BIA is **REVERSED**, and the final order of removal is **VACATED**.

---

[5](...continued)
interpretation of the INA); *see also Guardado-Garcia v. Holder*, 615 F.3d 900, 902 (8th Cir 2010) (refusing to follow *Silva-Trevino* to the extent inconsistent with circuit precedent).

10-9546, *Efagene v. Holder*
**O'BRIEN**, J, concurring in the result.

Moral turpitude?  Sexual abuse, particularly child sexual abuse, is universally condemned by Americans of conscience,[1] not merely because it is wrong but because its evil tendrils are detrimental to society.[2]

Accountability.  Attempts to commit a crime are often themselves criminal[3] and sometimes subject to punishments nearly as harsh as those permitted for the principal crime.  While perhaps not, by themselves, punishable as attempts, grooming and stalking behaviors are incipient attempts, as inherently vile as actionable ones.

Grooming – patient, calculated, surreptitious and applied behavior modification leading a child to accept, or not report, inappropriate sexual contact.  It usually consists of cultivating a child's trust and gradually, perhaps imperceptibly, conditioning the child to abandon lessons learned at the knee of a caring adult.

---

[1]  NAMBLA and its ilk notwithstanding; "The North American Man/Boy Love Association (NAMBLA) is a pedophile and pederasty advocacy organization in the United States that works to abolish age of consent laws criminalizing adult sexual contact with minors."
http://en.wikipedia.org/wiki/North_American_Man/Boy_Love_Association.  Last visited April 13, 2011.

[2]  This case does not involve a child (*see* Addendum I).  I speak to a worst case scenario because any suggestion that sex offender registration laws cannot, by definition, be crimes of moral turpitude impacts registration requirements for child sexual abusers.  In my view, all such registration laws can be crimes of moral turpitude if they contain a necessary and appropriate element of intent.

[3]  *See* Addendum II for examples.

Stalking.  Like all predators the pedophile generally stalks prey in likely locations – schools, playgrounds, libraries, malls, even churches.  But the predator is always alert to targets of opportunity wherever they might be found.  The victim, while not always pre-identified, is always identifiable as vulnerable, particularly to one with carefully honed skills.

Sex offender registration drives predators from the tangles and tall grasses into the open.  Doing so empowers the guardians and protectors of the naïve and fragile – the most vulnerable of our kind.  Sex offender registration is unlike vehicle registration; the difference is one of kind, not merely degree.  The BIA is correct "some obligations . . . are simply too important not to heed." *In re Tobar-Lobo*, 24 I & N Dec 143, 146-147 (BIA 2007).

A sex offender who fails or refuses to register, with intent to avoid the prophylactic purposes of the registration statutes, commits an act akin to grooming or stalking.  Because the ultimate purpose is to facilitate the exploitation of another child, it is not merely wrong and possibly illegal, but inherently corrupt; insidious and wicked. Moral turpitude!

I join in the result reached by the majority because the Colorado sex offender registration statute, Colo. Rev. Stat. § 18-3-412.5, treats as alike conduct ranging from merely negligent to intentional to malicious.  And because of the constraints (the categorical approach) imposed upon our ability to consider the facts of prior convictions. Had the Colorado statute singled out conduct (failure to register) accompanied by malignant intent my vote would be different.

**Addendum I**


Efagene was originally charged in Arapahoe County, Colorado, with four counts: (1) Sexual penetration [apparently of an adult] with submission caused by use of a handgun or an item credibly presented to be a handgun.  *See* Colo. Rev. Stat. §18-3-402(1)(a), (5)(a)(III); (2) Unlawful Sexual Contact with submission caused by the application of physical force or violence.  *See* Colo. Rev. Stat. §§ 18-3-404 (1)(a), (2) and 18-3-402(4)(a); (3) Menacing by the use of a handgun or an item credibly presented to be a handgun.  *See* Colo. Rev. Stat. § 18-3-206; and (4) Crime of Violence - the use of a handgun in connection with a sexual assault.  *See* Colo. Rev. Stat. § 18-1.3-406(2)(a)(I)(A).  Pursuant to a plea agreement he pled to one count of Unlawful Sexual Contact in violation of Colo. Rev. Stat. § 18-3-404(1)(a) and was sentenced to time served, 364 days.

Colo. Rev. Stat. § 18-3-404, Unlawful Sexual Contact, relates to both adults and children.  It provides:

(1) Any actor who knowingly subjects a victim to any sexual contact commits unlawful sexual contact if:

(a)  The actor knows that the victim does not consent; or

(b)  The actor knows that the victim is incapable of appraising the nature of the victim's conduct; or

(c)  The victim is physically helpless and the actor knows that the victim is physically helpless and the victim has not consented; or

(d)  The actor has substantially impaired the victim's power to appraise or control the victim's conduct by employing, without the victim's consent, any drug, intoxicant, or other means for the purpose of causing submission; or

(e)  Repealed by Laws 1990, H.B.90-1133, § 25, eff. July 1, 1990.

(f)  The victim is in custody of law or detained in a hospital or other institution and the actor has supervisory or disciplinary authority over the victim and uses this position of authority, unless incident to a lawful search, to coerce the victim to submit; or

(g)  The actor engages in treatment or examination of a victim for other than bona fide medical purposes or in a manner substantially inconsistent with reasonable medical practices.

(1.5)   Any person who knowingly, with or without sexual contact, induces or coerces a child by any of the means set forth in section 18-3-402 to expose intimate parts or to engage in any sexual contact, intrusion, or penetration with another person, for the purpose of the actor's own sexual gratification, commits unlawful sexual contact.  For the purposes of this subsection (1.5), the term "child" means any person under the age of eighteen years.

(1.7)(a) Any person who knowingly observes or takes a photograph of another person's intimate parts without that person's consent, in a situation where the person observed has a reasonable expectation of privacy, for the purpose of the observer's own sexual gratification, commits unlawful sexual contact.  For purposes of this subsection (1.7), "photograph" includes any photograph, motion picture, videotape, print, negative, slide, or other mechanically, electronically, or chemically reproduced visual material.

(b) This subsection (1.7) is repealed, effective July 1, 2012.

(2)(a) Unlawful sexual contact is a class 1 misdemeanor and is an extraordinary risk crime that is subject to the modified sentencing range specified in section 18-1.3-501(3).

(b) Notwithstanding the provisions of paragraph (a) of this subsection (2), unlawful sexual contact is a class 4 felony if the actor compels the victim to submit by use of such force, intimidation, or threat as specified in section 18-3-402(4)(a), (4)(b), or (4)(c) or if the actor engages in the conduct described in paragraph (g) of subsection (1) of this section or subsection (1.5) of this section.

(3) If a defendant is convicted of the class 4 felony of unlawful sexual contact pursuant to paragraph (b) of subsection (2) of this section, the court shall sentence the defendant in accordance with the provisions of section 18-1.3-406; except that this subsection (3) shall not apply if the actor engages in the conduct described in paragraph (g) of subsection (1) of this section.

4

**Addendum II**

18 U.S.C. § 1201(d) ("Whoever attempts to violate [§1201] (a) [kidnapping] shall be punished by imprisonment for not more than twenty years.").

Colo. Rev. Stat. § 18-2-101(1) ("A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense. A substantial step is any conduct, whether act, omission, or possession, which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.")

Kan. Stat. Ann. § 21-5301(a) ("An attempt is any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime.")

Wyo. Stat. Ann. § 6-1-301(a) ("A person is guilty of an attempt to commit a crime if: (i) With the intent to commit the crime, he does any act which is a substantial step towards commission of the crime. A 'substantial step' is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime; or (ii) He intentionally engages in conduct which would constitute the crime had the attendant circumstances been as the person believes them to be.")