FILED
United States Court of Appeals
Tenth Circuit

October 1, 2012

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

TOMAS VAQUERO-CORDERO, a/k/a
Tomas V. Cordero, a/k/a Tomas Vauera
Cxordero, a/k/a Tomas Vaguern Cordero,

Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

Respondent.

No. 12-9504
(Petition for Review)

## ORDER AND JUDGMENT[*]

Before **GORSUCH**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **HOLMES**, Circuit Judge.

Petitioner Tomas Vaquero-Cordero is a native and citizen of Mexico. He

petitions for review of the agency's determination that his conviction for obstruction

of justice constituted a crime involving moral turpitude rendering him ineligible for

---

[*]      After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

cancellation of removal. We have jurisdiction pursuant to 8 U.S.C. § 1252. We GRANT the petition for review and REMAND for further proceedings.

## I. Factual Background

Petitioner unlawfully entered the United States without being admitted or paroled after inspection and authorization by an immigration officer. At the time of his removal hearing, he had been living in the United States for about twenty years and was married with four children.

The following facts are taken from petitioner's plea agreement in the obstruction-of-justice case. On March 19, 2011, petitioner was involved in a dispute with his wife through text messages. He had just been informed that his wife had been unfaithful and divorce was being discussed. He called his wife offensive names and indicated he was angry and did not want to talk. He told her "that if she came home at that moment a sad tragedy might occur." Admin. R. at 513.

Petitioner's wife called the police. When the police came to petitioner's home, he "intentionally prevent[ed] his own apprehension by applying force to his front door to keep it closed while officers attempted to enter his home. There was no intent to injure a police officer and no police officer was injured or put at risk of substantial bodily injury." *Id*.

Petitioner was arrested. He pleaded guilty to one count of obstruction of justice, in violation of Utah Code Ann. § 76-8-306(1)(b), and to one count of domestic violence in the presence of a child (his son was present when he sent the

text messages and may have seen or heard the text messages). He was sentenced to serve ninety days in jail total for both convictions followed by thirty-six months of court supervised probation.

After petitioner was arrested, the Department of Homeland Security initiated removal proceedings against him. He applied for cancellation of removal, but the Immigration Judge ("IJ") concluded that he was ineligible for that form of relief because his conviction for obstruction of justice constituted a crime involving moral turpitude under 8 U.S.C. § 1182(a)(2)(A)(i)(I). The Board of Immigration Appeals ("Board" or "BIA") affirmed the IJ's decision. Petitioner now seeks review of the Board's decision.[1]

## II. Standard of Review and Deference

The BIA interpreted the phrase "crime involving moral turpitude" used in § 1182(a)(2)(A)(i)(I) to include petitioner's conviction for obstruction of justice. We review questions of statutory interpretation de novo. *See Torres de la Cruz v. Maurer*, 483 F.3d 1013, 1019 and n.5 (10th Cir. 2007), giving deference, when appropriate, to the agency's interpretation of ambiguous or unclear statutory terms, *Efagene v. Holder*, 642 F.3d 918, 920 (10th Cir. 2011). More specifically, under the

---

[1] The IJ also determined that petitioner's domestic violence conviction constituted a crime involving moral turpitude. Petitioner also appealed that determination to the BIA, but the BIA concluded that it did not need to address that question because its determination on the obstruction-of-justice conviction rendered petitioner ineligible for cancellation of removal. Accordingly, that issue is not before this court.

Supreme Court's decision in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), we have observed that "a court gives deference to an agency's interpretation of a statute Congress charged it with administering if the statute is silent or ambiguous on the question at hand and the agency's interpretation is not arbitrary, capricious, or manifestly contrary to the statute." *Efagene*, 642 F.3d at 920. "An agency interpretation only qualifies for deference . . . when the agency acted in its 'lawmaking pretense.'" *Id.* (quoting *United States v. Mead Corp.*, 533 U.S. 218, 233 (2001)). "When the interpretation occurs in an adjudication, the agency acts in a lawmaking capacity if the decision is binding precedent within the agency." *Id.*

In this case, the Board's decision was issued by a single Board member and "a single member lacks the authority to create rules of law that bind the agency in other cases." *Carpio v. Holder*, 592 F.3d 1091, 1097 (10th Cir. 2010). This court has held, however, that "*Chevron* deference may apply to a non-precedential BIA decision if it relies on prior BIA precedent addressing the same question." *Efagene*, 642 F.3d at 920. The Board's decision in this case is not entitled to *Chevron* deference, however, because it did not rely on a prior precedential decision addressing the same question.

If *Chevron* deference is not appropriate, we then consider whether the Board's decision is entitled to deference under *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944). In doing so, we assess whether the Board's decision "has the power to persuade." *Carpio*, 592 F.3d at 1098 (internal quotation marks omitted). This

- 4 -

involves examining "the thoroughness evident in the BIA's consideration, the validity of its reasoning, and its consistency with earlier and later pronouncements." *Damaso-Mendoza v. Holder*, 653 F.3d 1245, 1248 (10th Cir. 2011).

## III.  The BIA's Decision

Section 76-8-306(1)(b) provides:

(1) An actor commits obstruction of justice if the actor, with intent to hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment of any person regarding conduct that constitutes a criminal offense:

   (b) prevents by force, intimidation, or deception, any person from performing any act that might aid in the discovery, apprehension, prosecution, conviction, or punishment of any person.

The agency determined that a violation of the obstruction-of-justice statute could not categorically be considered a crime involving moral turpitude because it was too broad.  The agency next considered petitioner's conviction under the modified categorical approach.  Under that approach, the agency considers the specific factual circumstances underlying the conviction and may review documents from the criminal case such as the charging documents and the plea agreement.  *See Rodriguez-Heredia v. Holder*, 639 F.3d 1264, 1269 (10th Cir. 2011).  After considering petitioner's statement in support of his guilty plea, the agency concluded that petitioner's conviction involved a crime of moral turpitude.

The Attorney General has interpreted "moral turpitude" as conduct that is "inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general."  *Matter of Silva-Trevino*,

24 I. & N. Dec. 687, 705 (A.G. 2008) (internal quotation marks omitted). In addition, "[a] finding of moral turpitude under the Act requires that a perpetrator have committed the reprehensible act with some form of scienter." *Id*. at 706.

The BIA focused on petitioner's statement that he did "intentionally prevent his own apprehension by applying force to his front door to keep it closed while officers attempted to enter his home." Admin. R. at 4 (internal quotation marks omitted). The BIA determined that "any intentional use of force to prevent apprehension of oneself is inherently base, vile, and contrary to the accepted rules of morality . . . and the duties owed between persons or to society in general." *Id*. at 4-5. The BIA also noted that "it is contrary to the generally accepted morals of our society that any person would perform any act that would prevent a police officer from performing his sworn duties to protect individuals and enforce the laws of the state they serve as an official representative." *Id*. at 4. The BIA therefore found petitioner's conviction to be a crime involving moral turpitude concluding that

> when a person, such as the respondent in the instant case, obstructs an authorized police officer from entering his home to investigate a crime which was committed or being committed within his home, in order to not be apprehended by law enforcement for the commission of that crime, he has engaged in behavior that violates the accepted rules of morality and the duties owed to society. *See Padilla v. Gonzales*, 397 F.3d 1016 (7th Cir. 2005); *Matter of Ruiz-Lopez*, 25 I&N Dec. 551 (BIA 2011).

Admin. R. at 5.

IV. Analysis

Petitioner contends that the BIA erred in determining that his conviction for obstruction of justice constituted a crime involving moral turpitude. He first argues that the BIA should have analyzed his conviction using the approach it employed in *Matter of Danesh*, 19 I. & N. Dec. 669 (BIA 1988), which involved a conviction for aggravated assault on a peace officer. In *Danesh*, the BIA noted the distinction between cases of simple assault of an officer, which do not involve moral turpitude, and cases arising under the statutory language at issue in *Danesh*, which required that the peace officer assaulted sustain bodily injury. *See id.* at 673. The BIA concluded "that an aggravated assault against a peace officer, which results in bodily harm to the victim and which involves knowledge by the offender that his force is directed to an officer who is performing an official duty, constitutes a crime that involves moral turpitude." *Id.*

Petitioner asserts that applying *Danesh* to his case would result in a finding that his conviction did not involve moral turpitude because there was no element of bodily harm in the charging document and the *mens rea* in the Utah statute is the intent to prevent apprehension, not the intent to assault or cause bodily harm. He argues that the BIA's failure to follow this established precedent was arbitrary and capricious.

Petitioner further argues that the BIA's justification for not applying *Danesh* is flawed. The BIA reasoned that *Danesh* did not represent a comparable situation

because the Utah obstruction-of-justice statute "contains absolutely no elements necessitating an assault" and "does not include a specific requirement that a police, or peace officer, be involved when this crime is committed." Admin. R. at 5 n.2.

The government responds that the BIA was not required to analyze petitioner's conviction under the *Danesh* precedent involving assault. We agree with the government that the *Danesh* case is not factually on all fours with the instant case and thus not controlling. However, there are no cases directly on point and we do not find the BIA's reasons for distinguishing *Danesh* to be persuasive. As petitioner asserts "the BIA failed to explain why the absence of certain elements prevented the application of *Danesh* even though these very elements were then presumed to exist and used to justify the finding of moral turpitude in [his] case." Pet'r Br. at 21. For example, the BIA emphasized that petitioner was obstructing "an authorized police officer," Admin. R. at 5, from entering his home to investigate a crime and that he intentionally used "force" to prevent his apprehension, *id*. at 4.

*Danesh* arguably represents persuasive authority for determining whether there was a crime involving moral turpitude in this case. *Danesh* involved an assault against a police officer who was performing his official duty and petitioner's case involved the use of force to prevent a police officer from performing his official duty. Under *Danesh*, more would be needed for a finding of moral turpitude than was present in petitioner's case where the plea agreement specifically states that "[t]here

was no intent to injure a police officer and no police officer was injured or put at risk of substantial bodily injury." *Id*. at 513.

The BIA's decision in this case could also lead to inconsistent results for aliens. In the *Matter of Garcia-Lopez*, 2007 WL 4699842 (BIA 2007) (unpublished), the Board analogized the crime of interfering with a law enforcement officer to simple assault. The Board considered *Danesh* and concluded that the petitioner's conviction for resisting arrest did not involve a crime of moral turpitude because there was no essential element of bodily injury. Moreover, the conviction documents showed that the petitioner "intentionally resisted arrest," but "they [did] not establish that he intentionally attempted to assault and cause bodily injury to a police officer." *Id*. The Board therefore found that the crime did not involve moral turpitude. We do not see much difference in petitioner's circumstances here–trying to avoid apprehension by using force to hold his door closed with no intent to cause injury to the police officer—from the circumstances in *Garcia-Lopez*, where the alien intentionally resisted arrest with no intent to cause injury to the police officer.

Petitioner next argues that, even if the BIA was not required to apply *Danesh*, the cases the BIA cited concerning moral turpitude are distinguishable and do not support its holding. After announcing its holding, the BIA included the following citation: "*See Padilla v. Gonzales*, 397 F.3d 1016 (7th Cir. 2005); *Matter of Ruiz-Lopez*, 25 I&N Dec. 551 (BIA 2011)." Admin. R. at 5. The BIA did not include a reference to a specific page in either of these cited decisions, there was no

parenthetical explanation for its reliance on these decisions, and there was no express analysis of these decisions. The BIA has failed therefore to offer persuasive reasoning as to why these cases support its holding.

As petitioner explains, *Padilla* involved a conviction for obstruction of justice for knowingly furnishing false information "with intent to prevent the apprehension or obstruct the prosecution or defense of any person." 397 F.3d at 1019 (internal quotation marks omitted). The BIA concluded that the crime was one involving moral turpitude, relying in part on long-standing authority that "a crime involving dishonesty or false statement is considered to be one involving moral turpitude." *Id.* at 1020 (internal quotation marks omitted). Here, petitioner's offense did not involve any element of dishonesty or making a false statement. Petitioner argues that this distinction makes *Padilla* inapplicable to his case and further argues that "it is telling that the BIA did not . . . elaborate on how *Padilla* applies in [his] case." Pet'r Br. at 24.

The offense in *Ruiz-Lopez* involved attempting to elude a pursuing police officer and required three elements: (1) a uniformed police officer gives the driver of a motor vehicle a sign to stop; (2) the driver willfully fails or refuses to stop; and (3) "while attempting to elude a pursuing police vehicle, the driver must drive his vehicle in a manner indicating a wanton or willful disregard for the lives or property of others." 25 I. &. N Dec. at 551. The Board noted that the Washington state courts considered this to be a "'resisting arrest' statute, which, in punishing conduct that

indicates a wanton or willful disregard for the life and property of others, punishes unreasonable conduct in resisting law enforcement activities." *Id*. (internal quotation marks omitted). The BIA concluded that the offense was a crime involving moral turpitude because "when a person deliberately flouts lawful authority *and* recklessly endangers the officer, other drivers, passengers, pedestrians, or property, he or she is engaged in seriously wrongful behavior that violates the accepted rules of morality and the duties owed to society." *Id*. (emphasis added) (internal quotation marks omitted).

Petitioner argues that the offense in *Ruiz-Lopez* is distinguishable from his offense because the statute in *Ruiz-Lopez* requires a "wanton or willful disregard for the lives or property of others." In contrast, the obstruction-of-justice statute in petitioner's case requires no wanton or willful endangerment of people or property and petitioner's plea agreement specifically states that there was no intent to injure a police officer and no police officer was injured or placed at risk of injury. Petitioner asserts that the BIA's reliance on *Ruiz-Lopez* does not justify its holding that his obstruction-of-justice conviction involves moral turpitude when his conviction lacks the additional or aggravated scienter requirements in *Ruiz-Lopez*.

Petitioner's discussion of the BIA's cited authority raises significant questions about the persuasiveness of the BIA's reasoning and the justification for its decision. The cases appear to support petitioner's argument that an aggravating factor is required for a crime to involve moral turpitude (i.e., the false statement in *Padilla* or

the reckless endangerment in *Ruiz-Lopez*) and the BIA has not persuasively explained why those cases apply on the facts in petitioner's case.

Tellingly, the government does not respond to or address petitioner's argument that these cases are distinguishable and do not support the BIA's holding. Instead, the government's response brief skips this section of petitioner's argument altogether. In response to his argument that the Board's decision was arbitrary and capricious and departed from its prior precedents without explanation, the government makes the following minimal reference to the Board's reliance on this precedent: "The Board explained why it distinguished *Matter of Danesh* and applied the proper precedents instead. A.R. 4-5 (citing *Matter of Silva-Trevino*, 24 I. & N. Dec. at 690; *Matter of Lopez-Meza*, 22 I. & N. Dec. 1188 (BIA [1999]); *Matter of Ruiz-Lopez*, 25 I. & N. Dec. 551 (BIA 2011))." Aplee. Br. at 22. The government's brief never mentions *Padilla*.

The BIA's analysis is truncated and offers no explanation for the authority that it relied upon in determining that petitioner's conviction is for a crime involving moral turpitude. The BIA declined to rely on *Danesh*, but its reasons for rejecting that case are not persuasive. Moreover, petitioner specifically challenges the BIA's reliance on *Padilla* and *Ruiz-Lopez* and the government offers no rebuttal to petitioner's argument. Because the BIA's decision does not demonstrate thorough consideration of petitioner's case, offer sufficient support for its reasoning, and is inconsistent with its earlier pronouncements on crimes involving moral turpitude, the

BIA's decision is not persuasive and is not entitled to *Skidmore* deference. *See Damaso-Mendoza*, 653 F.3d at 1248.

Under non-deferential de novo review, we conclude that the BIA erred in determining that petitioner's crime involved moral turpitude. As we noted previously, the Attorney General has interpreted "moral turpitude" as conduct that is "inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Matter of Silva-Trevino*, 24 I. & N. Dec. at 705 (internal quotation marks omitted). Petitioner's conduct involved "applying force to his front door to keep it closed while officers attempted to enter his home." Admin. R. at 513. We disagree with the BIA's conclusion that this conduct is "inherently base [and] vile." *Id*. at 4.

The government tries to bolster the BIA's characterization of petitioner's conduct as reprehensible by asserting that "his conduct involved the use of force as police officers were attempting to lawfully enter his residence, *a time of particular peril for law enforcement*" and then cites to two Fourth Amendment warrantless search cases. Aplee. Br. at 18 (emphasis added). This is a post-hoc rationalization by the government, as it was not part of the BIA's decision. Moreover, the record of conviction directly contradicts the government's contention that police officers were put in danger by petitioner's conduct as the plea agreement states "[t]here was no intent to injure a police officer *and no police officer was injured or put at risk of substantial bodily injury*." Admin. R. at 513 (emphasis added).

## V.  Conclusion

For the foregoing reasons, we GRANT the petition for review and REMAND to the BIA for further proceedings.

Entered for the Court


Jerome A. Holmes
Circuit Judge