FILED
United States Court of Appeals
Tenth Circuit

April 30, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

RUBEN BELTRAN-RUBIO,

Petitioner,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

Respondent.

No. 13-9565
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **PHILLIPS**, **PORFILIO**, and **BALDOCK**, Circuit Judges.

---

Ruben Beltran-Rubio, a native and citizen of Mexico, challenges the Board of

Immigration Appeals' (BIA's) decision upholding the denial of his application for

cancellation of removal and ordering him to depart the United States. As explained

below, we conclude that Beltran-Rubio's application was properly denied and that he

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

is deportable because he committed a crime involving moral turpitude (CIMT). Thus, we deny his petition for review.

## BACKGROUND

Beltran-Rubio entered the United States without inspection in 1994. Twelve years later, he was convicted in Colorado state court of criminal impersonation to gain a benefit, Colo. Rev. Stat. § 18-5-113(1)(e) (2006), a felony carrying a one-year minimum prison sentence. The Department of Homeland Security (DHS) initiated removal proceedings on the grounds that Beltran-Rubio had entered the country illegally and had committed a crime involving moral turpitude. In response, Beltran-Rubio applied for cancellation of removal.[1] DHS filed a motion to pretermit Beltran-Rubio's application, arguing that he was ineligible for cancellation of removal because his Colorado conviction was a CIMT.

An Immigration Judge (IJ) found Beltran-Rubio removable as charged, granted DHS's motion, denied Beltran-Rubio's application, and ordered him to depart the country within two months. Beltran-Rubio appealed. The BIA dismissed his appeal, concluding that Colorado's criminal-impersonation statute establishes a CIMT because the statute inherently "requires fraud in knowingly using a falsehood, with the attempt to obtain a benefit." R. at 4.

---

[1]    An alien may be eligible for cancellation of removal if he meets certain requirements, including that he has not been convicted of a CIMT. *See* 8 U.S.C. § 1229b(b)(1)(C).

DISCUSSION

"In our review of the agency's decision, we decide purely legal questions *de novo*." *Karki v. Holder*, 715 F.3d 792, 800 (10th Cir. 2013) (internal quotation marks omitted). Thus, we review de novo the BIA's legal determination that Beltran-Rubio's conviction under § 18–5–113(1)(e) qualifies as a CIMT.[2]

"To determine whether a state conviction is a [CIMT], we ordinarily employ the categorical approach." *Rodriguez-Heredia v. Holder*, 639 F.3d 1264, 1267 (10th Cir. 2011). Under that approach, "this court looks only to the statutory definition of the offense and not to the underlying facts of the conviction to determine whether the offense involves moral turpitude." *Efagene v. Holder*, 642 F.3d 918, 921 (10th Cir. 2011). "Moral turpitude refers to conduct which is inherently base, vile, or depraved, contrary to the accepted rules of morality and

---

[2]     Because a single member of the BIA entered a brief affirmance order under 8 C.F.R. § 1003.1(e)(5), we review the BIA's decision as the final order of removal, but "we may consult the IJ's opinion to the extent that the BIA relied upon or incorporated it." *Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007).

To the extent the government urges that we defer under *Chevron, U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837 (1984), to the BIA's view of § 18-5-113(1)(e) as a CIMT, we decline. *Chevron* deference does not apply, where, as here, the BIA's decision is unpublished and does not rely on "prior BIA precedent addressing the same question." *Efagene v. Holder*, 642 F.3d 918, 920 (10th Cir. 2011). Moreover, "the BIA is owed no deference to its interpretation of the substance of the state-law offense at issue, as Congress has not charged it with the task of interpreting a state criminal code." *Id.* at 921. But insofar as the BIA's decision has "the power to persuade," it is "entitled to respect." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (internal quotation marks omitted) (discussing the sliding-scale model of deference established in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

duties owed between man and man, either one's fellow man or society in general."
*Id.* at 921 (internal quotation marks omitted).

Section 18-5-113 resides in the Colorado criminal code as one of many "Offenses Involving Fraud." *See* Colo. Rev. Stat., Title 18, Article V. The Colorado Court of Appeals describes "the criminal impersonation statute [a]s one provision of the Criminal Code invoking a portion of the state's police power to criminalize certain types of *fraudulent* impersonation." *People v. Van De Weghe*, 312 P.3d 231, 235 (Colo. Ct. App. 2012) (emphasis added).

The statute provides: "(1) A person commits criminal impersonation if he knowingly assumes a false or fictitious identity or capacity, and in such capacity he . . . (e) [d]oes any . . . act [not specified in subclauses (a) through (d)] with intent to unlawfully gain a benefit for himself or another or to injure or defraud another." Colo. Rev. Stat. § 18-5-113(1)(e). Beltran-Rubio contends that the statute is not categorically a CIMT because "it prohibits conduct that is both morally turpitudinous and conduct that is not." Aplt. Opening Br. at 7. He acknowledges that this court recognizes a crime as a CIMT if, for instance, it has "fraud [ ]as an ingredient." *Rodriguez-Heredia*, 639 F.3d at 1268 (internal quotation marks omitted). He then points out that fraud is mentioned in subclause (e) as only one of three possible intended goals: (1) intent to benefit; (2) intent to injure; or (3) intent to "defraud." Thus, Beltran-Rubio contends, a person could commit an act with the intent to benefit

- 4 -

and, despite violating the statute, would not have committed a CIMT because there is no fraud.

We disagree with Beltran-Rubio's interpretation of the statute, as he ignores the statute's introductory clause. That clause requires the "knowing[ ] assum[ption of] a false or fictitious identity or capacity," Colo. Rev. Stat. § 18-5-113(1)—or, stated succinctly, deceit. And when that deceit is used with any of the intended goals in subclause (e)—whether to benefit, injure, or defraud—there is fraud, as that term is commonly understood. *See* Black's Law Dictionary 731 (9th ed. 2009) (defining fraud as "[a] knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment"); *cf., e.g.*, *Lagunas-Salgado v. Holder*, 584 F.3d 707, 712 (7th Cir. 2009) (holding "that knowingly selling false official identification documents involves inherently deceptive conduct and is, therefore, a crime involving moral turpitude"). Thus, by knowingly assuming a fake identity or capacity, a person can be guilty of a CIMT under § 18-5-113(1)(e) even if he or she employs that deceit with only the intent to benefit or injure.

Beltran-Rubio asserts that "[i]f intent to defraud could truly be read into the entire statute, the legislature had no reason to include 'intent to defraud' as a possible element of the crime separate from 'intent to gain a benefit.'" Aplt. Opening Br. at 18. We disagree. The fact that fraud can be implied from the statute's introductory clause for the purpose of assessing morally turpitudinous conduct does not mean that there are duplicative fraud intents. Specifically, the Colorado Supreme Court has

- 5 -

stated that the statute has two distinctly different mental states:  (1) the "knowing utilization of a false or fictitious identity or capacity"; and (2) "the intent to unlawfully gain a benefit for one's self or another, or to injure or defraud another." *Alvarado v. People*, 132 P.3d 1205, 1208 (Colo. 2006).  While the first mental state, in conjunction with using a fake identity or capacity to accomplish one of three intended goals, supplies the fraud that renders the statute's violation a CIMT, there are still two separate mental states - knowing and intentional.

Beltran-Rubio also contends that viewing § 18-5-113(1)(e)'s introductory clause as supplying a fraud requirement would mean that fraud inheres in "any crime . . . in which a falsehood is used to gain a benefit without regard to the materiality of the fact, the knowledge or lack of knowledge on the part of the other party, the intent that someone act on the misrepresentation, malevolence of intent or, of considerable importance here, damages."  Aplt. Opening Br. at 15.  But he cites no authority showing that the perceived shortcomings in the statute are relevant to whether a crime actually involves moral turpitude.  *See Rodriguez-Heredia*, 639 F.3d at 1268-69 (stating that the absence in Utah's identity-theft statute of a requirement that the fraudster procure something of value "appears irrelevant to whether fraud crimes are crimes of moral turpitude").  Moreover, as the BIA has explained, "where fraud is inherent in an offense, it is not necessary that the statute prohibiting it include the usual phraseology concerning fraud in order for it to involve moral turpitude."  *Matter of Flores*, 17 I. & N. Dec. 225, 228 (1980).

Finally, Beltran-Rubio argues that Colorado's criminal impersonation statute has been used to convict individuals for conduct that does not qualify as a CIMT. For instance, he cites *People v. Bauer*, 80 P.3d 896 (Colo. Ct. App. 2003), which upheld a conviction under § 18-5-113(1)(e) for an attorney practicing law with a suspended license. Beltran-Rubio contends that but for the "regulatory scheme for licensing lawyers, [Bauer] would have done nothing wrong." Aplt. Reply Br. at 8. As the Colorado Court of Appeals observed, however, Bauer deceived clients and unlawfully obtained money from them. *Bauer*, 80 P.3d at 898. Beltran-Rubio provides no convincing argument that such conduct is not morally turpitudinous.

Beltran-Rubio also cites cases upholding impersonation convictions for giving a false name to police in order to avoid arrest. *See, e.g.*, *People v. Borrego*, 738 P.2d 59 (Colo. Ct. App. 1987). He asserts that such conduct cannot be a CIMT because the defendants "are people who suffer from high anxiety or . . . fail to think things through quickly," Aplt. Reply Br. at 9, and are only playing a "game of cat-and-mouse" with the police, Aplt. Opening Br. at 20. To support his assertion, he cites an unpublished decision by this court holding that a violation of Utah's obstruction-of-justice statute is not a CIMT. *See Vaquero-Cordero v. Holder*, 498 F. App'x 760, 762 (10th Cir. 2012) (defendant pleaded guilty to obstructing justice by "applying force to his front door to keep it closed while officers attempted to enter"). But *Vaquero-Cordero* is not at all helpful to Beltran-Rubio, as that case did not involve Colorado's impersonation statute and even observed that Vaquero-Cordero's

- 7 -

obstruction of justice was not similar to crimes involving dishonesty or a false statement, which are CIMTs. *See id.* at 765 (citing *Padilla v. Gonzales*, 397 F.3d 1016, 1019 (7th Cir. 2005) (holding that "knowingly furnishing false information" to police to prevent apprehension is a CIMT)).

Beltran-Rubio's attempts to undermine the categorical nature of criminal impersonation as a CIMT are without merit.

## CONCLUSION

The fraud that renders § 18-5-113(1)(e) a CIMT is inherent in knowingly assuming a fake identity or capacity to achieve an intended goal. We conclude, therefore, that there is no "realistic probability . . . that [Colorado] would apply its statute to conduct that" is not morally turpitudinous, *Rodriguez-Heredia*, 639 F.3d at 1267. Accordingly, we deny Beltran-Rubio's petition for review.

Entered for the Court


Bobby R. Baldock
Circuit Judge

- 8 -