FILED
United States Court of Appeals
Tenth Circuit

April 18, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SETH DZEREKEY,

      Petitioner,

v.

ERIC HOLDER, JR., United States
Attorney General,

      Respondent.

No. 13-9570
Petition for Review

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, **McKAY** and **MATHESON**, Circuit Judges.

An immigration judge ("IJ") ordered Seth Dzerekey removed from the United

States for being an alien present in the United States without admission or parole. Mr.

Dzerekey sought cancellation of his removal, arguing his citizen daughter is disabled and

relies on him for care. The IJ denied cancellation because Mr. Dzerekey failed to show

his Colorado conviction for third degree assault was not a crime involving moral

turpitude ("CIMT"). Mr. Dzerekey appealed to the Board of Immigration Appeals

---

* This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

("BIA"), which affirmed. Mr. Dzerekey petitions this court for review of the BIA's denial of his appeal, arguing (1) the Colorado statute under which he was convicted does not categorically establish a crime involving moral turpitude and (2) the IJ misapplied the modified categorical approach. Exercising jurisdiction under 8 U.S.C. § 1252(a), we deny his petition.[1]

## I.  **BACKGROUND**

Mr. Dzerekey is a native citizen of Ghana. He arrived in the United States in 1999 with a nonimmigrant B2 (tourist) visa. In 2003, he and Beatrice Agyei had a daughter, who is a U.S. citizen by birth.

Ms. Agyei and the daughter lived with Mr. Dzerekey in Colorado (along with Mr. Dzerekey's teenage son and uncle) until 2004. He asked them to move out just after he married Angela Appiah, a U.S. citizen and Georgia resident. Mr. Dzerekey stayed in Colorado, Ms. Appiah stayed in Georgia, and they never lived together.

---

[1] Although we do not normally have jurisdiction over denials of discretionary relief such as cancellation of removal, *see* 8 U.S.C. § 1252(a)(2)(B), here the denial turned on the purely legal determination of whether Mr. Dzerekey satisfied his burden to show his conviction was not for a crime involving moral turpitude. "[T]his court always retains jurisdiction to review constitutional claims and questions of law." *Garcia v. Holder*, 584 F.3d 1288, 1289 n.2 (10th Cir. 2009); *see also* 8 U.S.C. § 1252(a)(2)(D) ("Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.").

In 2005, police were called to Mr. Dzerekey's residence for a domestic disturbance between him and Ms. Agyei. The police report indicates a neighbor witness saw Mr. Dzerekey hit Ms. Agyei multiple times, and the police noted injuries to Ms. Agyei's face. Mr. Dzerekey was charged with and pled guilty to third degree assault in violation of Colorado Revised Statute § 18-3-204.

In August 2009, the Department of Homeland Security began removal proceedings against Mr. Dzerekey for entering the country illegally, not having proper documentation, and entering into a fraudulent marriage with Ms. Appiah to obtain lawful permanent resident status.

On November 24, 2010, Mr. Dzerekey appeared before an IJ, admitting he did not have the proper unexpired documentation, but denying he entered illegally or attempted to stay by using a fraudulent marriage. He disputed the removal charges and requested a cancellation of removal or voluntary departure.

On May 3, 2012, Mr. Dzerekey appeared before the IJ again to present evidence and argue in support of his request. The IJ stated Mr. Dzerekey would not be eligible for cancellation of removal if he had been convicted of a CIMT. *See* 8 U.S.C. § 1229b(b)(1)(C). The IJ recognized that Mr. Dzerekey had been convicted of third degree assault under Colorado law in 2004 and found that Mr. Dzerekey failed to meet his burden to show his crime was not a CIMT. The IJ first looked to the statute and stated he did not know what level of mens rea Mr. Dzerekey pled to under the statute—

knowingly or recklessly. Without any other evidence in the record regarding the conviction, the IJ looked to the police report to learn "what may have happened." Appx. at 64.

The IJ ultimately determined Mr. Dzerekey committed a CIMT. The IJ also found Mr. Dzerekey did not have good moral character because he entered into a fraudulent marriage with Ms. Appiah for immigration purposes. The IJ therefore found him ineligible for cancellation of removal.

Mr. Dzerekey filed an appeal with the BIA on June 4, 2012. The BIA affirmed the IJ and dismissed the appeal. The BIA stated the IJ correctly determined Mr. Dzerekey had not met his burden to show he had not been convicted of a CIMT. The BIA, relying on *Garcia v. Holder*, 584 F.3d 1288, 1289 (10th Cir. 2009), stated the Colorado statute reaches conduct that both does and does not involve moral turpitude. Because the statute is divisible and Mr. Dzerekey did not present any evidence to show his offense did not involve moral turpitude, the BIA affirmed the IJ.[2]

He now petitions this court to review the BIA's determination.

## II. **DISCUSSION**

---

[2] Although Mr. Dzerekey appealed to the BIA the IJ's determination that he did not have good moral character because his marriage with Ms. Appiah was fraudulent, the BIA did not address that issue. Instead, the BIA affirmed the IJ's decision that Mr. Dzerekey's conviction was for a CIMT. We therefore limit our discussion to that issue.

Mr. Dzerekey challenges the BIA's affirmance of the IJ's decision for two reasons:  (1) Colorado's third degree assault statute does not encompass any conduct that is a CIMT; and (2) even if the statute is divisible, the IJ misapplied the "modified categorical approach" to determine whether a crime is a CIMT.  We deny Mr. Dzerekey's petition on both issues.

## A. *Standard of Review*

We review the BIA's legal determinations de novo.  *See Herrera-Castillo v. Holder*, 573 F.3d 1004, 1007 (10th Cir. 2009).  We review the BIA's factual determinations for substantial evidence.  *See Razkane v. Holder*, 562 F.3d 1283, 1287 (10th Cir. 2009).

We review the BIA, but we are "not precluded from consulting the [IJ's] more complete explanation of those same grounds."  *Barrera-Quintero v. Holder*, 699 F.3d 1239, 1244 (10th Cir. 2012).  Although we generally defer to the agency's interpretation of ambiguous statutes Congress charged it with administering, we "owe[] no deference to [the BIA's] interpretation of the substance of the state-law offense at issue, as Congress has not charged it with the task of interpreting a state criminal code."  *Efagene v. Holder*, 642 F.3d 918, 920-21 (10th Cir. 2011).

## B. *Legal Background*

To be eligible for cancellation of removal, a petitioner must show that he or she,

(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

(B) has been a person of good moral character during such period;

(C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and

(D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1). A disqualifying conviction under § 1182(a)(2) includes "a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime." *Id.* § 1182(a)(2)(A)(i)(I).

"Moral turpitude refers to conduct which is inherently base, vile, or depraved, contrary to the accepted rules of morality and duties owed between man and man, either one's fellow man or society in general." *Wittgenstein v. INS*, 124 F.3d 1244, 1246 (10th Cir. 1997) (quotations omitted). For an offense to involve moral turpitude, the conduct must be inherently wrong, or *malum in se*, not merely wrong because of a statutory proscription, or *malum prohibitum*. *See Efagene*, 642 F.3d at 921.

"An alien who has conceded removability has the 'burden of establishing that he or she is eligible for any requested benefit or privilege and that it should be granted in the exercise of discretion.'" *Garcia*, 584 F.3d at 1289 (quoting 8 C.F.R. § 1240.8(d)). If the

record is inconclusive or ambiguous, the petitioner has failed to meet this burden. *Id.* at 1290.

"To determine if a particular conviction under state law meets the definition of an offense for which a noncitizen may be removed under the INA, the elements of the state-law offense are first analyzed using the [traditional] categorical approach set forth in *Taylor v. United States*, 495 U.S. 575 (1990)." *Efagene*, 642 F.3d at 921 (parallel citation omitted). Using this approach, we determine only whether the statutory definition of the offense is a CIMT; we do not look to the underlying facts of the conviction. *See Taylor*, 495 U.S. at 600.

If the statutory definition of the prior conviction "sets out one or more elements of the offense in the alternative," *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013)—such as "knowingly *or* recklessly," Colo. Rev. Stat. § 18-3-204(1)(a) (emphasis added)—and under one of the alternatives the conduct is a CIMT, the statute is "divisible," and we employ a modified categorical approach. *See Descamps*, 133 S. Ct. at 2281; *United States v. Ramon Silva*, 608 F.3d 663, 669 (10th Cir. 2010). This approach allows an IJ to look to the record of conviction to determine whether the petitioner's crime was a CIMT. *Ramon Silva*, 608 F.3d at 669. If the petitioner entered a guilty plea, the record of conviction would include "a transcript of plea colloquy, . . . a written plea agreement presented to the court, or . . . a record of comparable findings of fact adopted by the defendant upon entering the plea." *Id.* at 665 (quotations omitted).

The Colorado statute under which Mr. Dzerekey was convicted for third degree assault defines the offense as "knowingly or recklessly caus[ing] bodily injury to another person or with criminal negligence . . . caus[ing] bodily injury to another person by means of a deadly weapon." Colo. Rev. Stat. § 18-3-204(1)(a). We determined in *Garcia v. Holder*, 584 F.3d 1288 (10th Cir. 2009), that this statute is divisible between the knowingly and recklessly mens rea components. We further held that a petitioner who could not show the particular mens rea underlying his or her plea could not meet his burden to establish the crime was not a CIMT. *Id.* at 1290.

## C. *Analysis*

### 1. **Third Degree Assault Statute Is Divisible**

Mr. Dzerekey contends the BIA erred in determining the Colorado third degree assault statute encompasses a CIMT, arguing the statute requires only the general intent of knowingly committing the offense or recklessly committing the offense without serious bodily injury. He also argues the BIA erred in relying on *Garcia*.[3]

---

[3] The Government contends Mr. Dzerekey did not attempt to distinguish *Garcia* before the BIA and he therefore cannot raise these arguments here. *See Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010) ("[A]n alien must present the *same specific legal theory* to the BIA before he or she may advance it in court."). Because we determine *Garcia* controls, we do not decide whether Mr. Dzerekey preserved his arguments.

We affirm the BIA's decision because *Garcia* controls.[4] In *Garcia*, we were asked whether the BIA properly affirmed the IJ's cancellation of petitioner's removal. The petitioner had pled guilty to committing third degree assault in Colorado, but, through no fault of his own, the plea agreement failed to specify whether he had pled guilty to knowingly causing bodily injury or recklessly doing so. 584 F.3d at 1289. As a result, the IJ could not determine whether he was convicted of a CIMT. Because it was the petitioner's burden to show his conviction was not for a CIMT and he had failed to meet this burden before the IJ, we denied his petition. *Id.*

Although the court in *Garcia* did not explicitly say that the statute is divisible, the result is possible only if the court determined the statute covered some conduct that involved moral turpitude and other conduct that did not. If the statute covered only conduct not involving moral turpitude, the petitioner would not have needed to present evidence of the nature of his offense. We therefore hold the statute is divisible and includes a CIMT.

2. **Application of the Modified Categorical Approach**

Because the Colorado statute is not categorically a CIMT but covers conduct that is a CIMT, Mr. Dzerekey's fate before the IJ turned on applying the modified categorical approach. This typically means looking to the record of conviction to determine whether

---

[4] Mr. Dzerekey cites to unpublished BIA decisions reaching the opposite outcome from *Garcia*. These cases are not controlling because they are unpublished.

Mr. Dzerekey was convicted of a CIMT. *See Ramon Silva*, 608 F.3d at 665. But because Mr. Dzerekey conceded removability, he had the burden to show he was eligible for cancellation of removal, including not being convicted of a CIMT. *Garcia*, 584 F.3d at 1289.[5] Mr. Dzerekey failed to provide any evidence or record of conviction and therefore failed to meet his burden.[6]

---

[5] In his reply brief, Mr. Dzerekey argues for the first time that he should not have had the burden to prove his conviction was not a crime of moral turpitude because that is a legal question, not a factual one. We do not address issues raised for the first time in reply briefs. *See Hill v. Kemp*, 478 F.3d 1236, 1250 (10th Cir. 2007) ("It is our general rule . . . that arguments and issues presented at such a late stage are waived.").

[6] Citing 8 U.S.C. § 1158, Mr. Dzerekey contends the IJ was required to request specifically the record of conviction. He is mistaken. That provision, which governs applications for asylum and the burden of proof for showing the applicant is a refugee, is inapplicable here.

Mr. Dzerekey also argues the IJ misapplied the modified categorical approach by looking outside the record of conviction to a police report (introduced by the Government) to determine whether the crime was one of moral turpitude. A police report is not normally consulted under the modified categorical approach. *See In re Teixeira,* 21 I&N Dec. 316, 319 (BIA 1996). The BIA, however, in *In re Silva-Trevino*, 24 I&N Dec. 687, 699 (BIA 2008), allowed the IJ to look at facts outside the record of conviction if necessary.

We have neither accepted nor rejected this approach, *see Efagene*, 642 F.3d at 921 n.2, 926 n.5, and need not do so here. The BIA did not err by relying on *Garcia* to decide Mr. Dzerekey did not meet his burden. He failed to meet his burden whether or not the IJ looked at the police report.

### III. **CONCLUSION**

For the foregoing reasons, we deny Mr. Dzerekey's petition for review.


ENTERED FOR THE COURT



Scott M. Matheson, Jr.
Circuit Judge