2014 COA 175

**The PEOPLE of the State of Colorado,**
Plaintiff–Appellee,

v.

**Antonio Israel VICENTE–SONTAY,**
Defendant–Appellant.

**Court of Appeals No. 13CA0531**

Colorado Court of Appeals,
Div. II.

Announced December 31, 2014

John W. Suthers, Attorney General, Jacob R. Lofgren, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Law Office of Victor T. Owens, Victor T. Owens, Parker, Colorado, for Defendant–Appellant.

Opinion by JUDGE GABRIEL

¶ 1 Defendant, Antonio Israel Vicente–Sontay, appeals the denial after a hearing of his Crim. P. 35(c) petition. We conclude that the postconviction court did not err in denying Vicente–Sontay's claims that plea counsel was constitutionally ineffective in (1) not investigating or otherwise pursuing an evidence suppression issue arising under the Immigration Reform and Control Act of 1986 (IRCA); (2) not advising him that his guilty plea would render him ineligible for cancellation of removal; and (3) not obtaining a K'iche interpreter. We further conclude that the postconviction court did not err in concluding that Vicente–Sontay spoke and understood Spanish sufficiently to enter a knowing, voluntary, and intelligent plea. Accordingly, we affirm.

## I. Background

¶ 2 Vicente–Sontay, an undocumented noncitizen of the United States, completed a federal I–9 employment-eligibility verification form and began work for a company in Greeley, Colorado (employer). On his verification form, he used a Social Security card and Missouri identification card, claiming to be a United States citizen named Marco Antonio Perez.

¶ 3 Thereafter, an agent from the Department of Homeland Security, Homeland Security Investigations (HSI) conducted an I–9 audit and inspected employer's employment verification forms to ensure that its employees were authorized to work in the United States. In the course of this audit, the agent confirmed an outstanding Florida warrant for tax fraud against Marco Antonio Perez and notified the Greeley police of this warrant. Believing that they were arresting Perez on the warrant, the police then arrested Vicente–Sontay. Vicente–Sontay was advised of and waived his *Miranda* rights, and he told the police that his real name was

Weld County District Court No. 10CR1525, Honorable Timothy G. Kerns, Judge

Antonio Israel Vicente–Sontay, not Marco Antonio Perez, and that he had purchased a fraudulent Social Security card and Missouri identification card for $150.

¶ 4 Vicente–Sontay was booked into county jail, his father posted his bond, and he was ultimately charged with identity theft and criminal impersonation. Thereafter, while represented by counsel, he pleaded guilty to criminal impersonation and was sentenced to an agreed upon term of two years of supervised probation, with no additional incarceration. He subsequently violated the terms and conditions of this probation, however, so his probation was revoked and he was sentenced to a one-year term of imprisonment.

¶ 5 Throughout the entirety of the foregoing proceedings, including numerous court appearances, Vicente–Sontay was assisted by Spanish interpreters and never expressed any concern, or gave any reason for concern, regarding his ability to understand the proceedings. Nor did any of the interpreters indicate any difficulty in communicating with him.

¶ 6 After his release from prison, Vicente–Sontay was transferred to the custody of Immigration and Customs Enforcement. He then filed a petition for postconviction relief pursuant to Crim. P. 35(c). In this petition, he alleged that his plea counsel was constitutionally ineffective in (1) failing to file a motion to suppress the I–9 form and related documentation pursuant to the IRCA, 8 U.S.C. § 1324a(b)(5) (2012); (2) failing to advise him that a criminal impersonation conviction is a crime involving moral turpitude (CIMT) resulting in mandatory deportation and statutory loss of eligibility for cancellation of removal; and (3) failing to inquire about his native language and to obtain a K'iche interpreter for him. He also asserted that the lack of a K'iche interpreter raised "real doubt" as to whether his plea was knowing and voluntary.

¶ 7 The postconviction court conducted a five-day evidentiary hearing on the Crim. P. 35(c) petition and heard from nine witnesses. As pertinent here, on the suppression issue, plea counsel testified that she did not do any research on section 1324 or regarding I–9 forms. She did, however, consider a suppression issue relating to the statements that Vicente–Sontay had made after his arrest. Counsel advised Vicente–Sontay regarding this suppression issue but told him that if they pursued the issue, he could possibly be detained because federal agents would likely testify at any suppression hearing, thus turning their attention back to him. He chose not to pursue the issue.

¶ 8 On the immigration advisement issue, an immigration expert testified that there was no doubt that criminal impersonation was a CIMT and would have barred Vicente–Sontay from obtaining relief or defending against his removal or deportation. Plea counsel, however, testified that she had consulted a different immigration expert and that this expert had told her that there was a split among immigration judges in Denver regarding whether criminal impersonation was a CIMT. The expert's response to counsel's inquiry further noted, however, that criminal impersonation was likely a CIMT, and the expert later testified that he should have said that immigration judges had split on whether the criminal impersonation statute was a divisible statute, such that certain violations of that statute would be CIMTs and others would not.

¶ 9 Based on her expert's response to her inquiry, counsel advised Vicente–Sontay, before he pleaded guilty, that he should operate or work off of the assumption that his plea would make him deportable and inadmissible. Counsel did not, however, specifically advise him that a plea would result in his loss of eligibility for discretionary relief, such as cancellation of removal. Vicente–Sontay then chose to plead guilty, and it was counsel's impression that he did so because he wanted to eliminate his father's obligations on the bond.

¶ 10 On the K'iche interpreter issue, a linguistics expert testified that Vicente–Sontay is a native speaker of K'iche from a particular area of Guatemala and that he understood only about twenty-five percent of the Spanish-translated court documents that he had received. Two of Vicente–Sontay's probation officers and an HSI agent, however, all of whom were proficient in Spanish,

testified that they had no difficulty communicating with Vicente–Sontay in Spanish and no concerns regarding his ability to understand them. Likewise, plea counsel testified that her Spanish interpreter did not indicate to her that the interpreter was having difficulty translating for Vicente–Sontay.

¶ 11 After the hearing, the postconviction court issued a remarkably thorough thirty-six page, single-spaced order denying Vicente–Sontay's Crim. P. 35(c) petition. As pertinent here, the court concluded that plea counsel was not ineffective in not filing a motion to suppress under the IRCA because (1) such a motion would not have resulted in the suppression of the salient confession evidence against Vicente–Sontay and (2) Vicente–Sontay's position regarding the stronger suppression issue about which counsel had advised him showed that he would have pleaded guilty even had he been advised of the possible IRCA suppression issue.

¶ 12 The court further concluded that plea counsel was not ineffective with respect to her advice regarding the immigration consequences of Vicente–Sontay's plea because (1) those consequences were ambiguous, if not outright uncertain, and thus not truly clear, and counsel's advice was therefore adequate under prevailing law; and (2) the record revealed that Vicente–Sontay would have pleaded guilty even had he been advised regarding the long-term potential for discretionary relief.

¶ 13 Finally, the court found that Vicente–Sontay spoke Spanish sufficiently to engage in meaningful communications with his plea counsel and to navigate the judicial system. Accordingly, the court concluded that plea counsel was not ineffective in not obtaining a K'iche interpreter for Vicente–Sontay and that Vicente–Sontay's plea was knowing, voluntary, and intelligent.

¶ 14 Vicente–Sontay now appeals.

## II. Standard of Review

¶ 15 The postconviction court determines the weight and credibility to be given to the testimony of witnesses in a Crim. P. 35(c) hearing. *People v. Washington*, 2014 COA 41, ¶ 17, 345 P.3d 950. When the evidence in

the record supports the court's findings, we will not disturb those findings on review. *Id.* We, however, review the court's conclusions of law de novo. *Id.*

## III. Ineffective Assistance Claims

¶ 16 Vicente–Sontay contends that the postconviction court erred in rejecting his three ineffective assistance of counsel claims. We are not persuaded.

### A. Applicable Law

¶ 17 To obtain relief on an ineffective assistance of counsel claim, a defendant generally must satisfy the test adopted by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and followed in Colorado. *See, e.g., People v. Cole*, 775 P.2d 551, 554 (Colo.1989). Under *Strickland*'s two-prong test, a defendant is required

> to demonstrate first, that "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance," and second, that he suffered prejudice from his counsel's ineffectiveness, that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Id.* (quoting *Strickland*, 466 U.S. at 690, 694, 104 S.Ct. 2052).

¶ 18 Because of the difficulties inherent in evaluating an attorney's conduct without relying on the distorting effects of hindsight, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

¶ 19 Moreover, when reviewing the choices an attorney made at the plea bargain stage, strict adherence to the *Strickland* deficient performance standard is all the more essential because failure to respect the latitude

that *Strickland* requires creates two problems in the plea context. *Premo v. Moore*, 562 U.S. 115, 125, 131 S.Ct. 733, 741, 178 L.Ed.2d 649 (2011). First, "the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real." *Id.* Second, ineffective assistance of counsel claims that lack necessary foundation "may bring instability to the very process the inquiry seeks to protect." *Id.*

¶ 20 To prove prejudice in the context of a guilty plea, the defendant must establish a reasonable probability that but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *People v. Garcia*, 815 P.2d 937, 943 (Colo.1991).

¶ 21 If a court determines that a defendant has failed to prove either prong of the *Strickland* analysis, it may deny an ineffective assistance claim without addressing the other prong. *See Strickland*, 466 U.S. at 697, 104 S.Ct. 2052.

### B. IRCA Suppression Issue

¶ 22 Vicente–Sontay first contends that the postconviction court erred in concluding that counsel was not ineffective when she did not investigate or pursue a motion to suppress evidence based on the IRCA, 8 U.S.C. § 1324a(b)(5).

¶ 23 When a defendant's principal allegation of ineffectiveness concerns counsel's failure to litigate a suppression claim, the defendant must prove that the suppression claim was "meritorious" and that there is a reasonable probability that the verdict would have been different absent the excludable evidence. *See Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

¶ 24 Here, even though plea counsel did not do any research on the pertinent sections of the IRCA or regarding I–9 forms, we agree with the postconviction court that a suppression motion under the IRCA, even if successful, would not have altered the verdict had Vicente–Sontay proceeded to trial. Even were we to assume without deciding that the IRCA prohibited the state from

using the I–9 form in Vicente–Sontay's prosecution, *see State v. Reynua*, 807 N.W.2d 473, 479 (Minn.Ct.App.2011) (concluding that the IRCA prohibited the use of an I–9 form in a state prosecution for perjury), a suppression motion would not have resulted in the exclusion of Vicente–Sontay's confession, which resulted from the proper execution of a valid arrest warrant and not from the I–9 form. Thus, Vicente–Sontay has failed to show a reasonable probability that the verdict would have been different had he proceeded to trial and had the I–9 form been excluded from evidence.

¶ 25 We are not persuaded otherwise by Vicente–Sontay's assertion that the arrest warrant and his confession stemmed from an IRCA violation and thus the warrant and confession would have been excluded as fruits of the poisonous tree. The fruit of the poisonous tree doctrine applies to constitutional violations but generally does not apply to statutory violations like that alleged here. *See, e.g., People v. Clayton*, 207 P.3d 831, 838 (Colo.2009) ("Suppression of evidence is generally reserved to remedy violations of constitutional rights, and is not used to remedy statutory violations."); *People v. Martinez*, 898 P.2d 28, 31 (Colo.1995) ("We have often held that a statutory or criminal rule violation by itself does not mandate invocation of the exclusionary rule."). And Vicente–Sontay has failed to show why the doctrine should apply here.

¶ 26 We further agree with the postconviction court's conclusion that Vicente–Sontay failed to show that he would not have pleaded guilty had counsel properly investigated and pursued a suppression motion under the IRCA. As noted above, Vicente–Sontay chose to accept a plea rather than pursue a different suppression issue that, if successful, *would* have excluded his confession. The record reflects that he did so because (1) he was primarily concerned with eliminating his father's bond obligations; (2) he was secondarily concerned with remaining out of custody, which his plea successfully achieved; and (3) a suppression hearing risked re-alerting immigration officials to his undocumented status. In these circumstances, we conclude that the postconviction court's determination

that Vicente–Sontay would have pleaded guilty, even had the possibility of a suppression motion under the IRCA been presented to him, was supported by the evidence.

### C. Advice Regarding Immigration Consequences

¶ 27 Vicente–Sontay next contends that the postconviction court erred in rejecting his claim that plea counsel's advice regarding the immigration consequences of his plea was constitutionally ineffective. He contends that (1) the criminal impersonation charge to which he pleaded guilty was clearly a CIMT and thus counsel was obliged to advise him that it would have resulted in mandatory deportation and (2) counsel was obliged to advise him that his plea would result in his losing eligibility for cancellation of removal.

¶ 28 When the terms of the relevant immigration statute are "succinct, clear, and explicit" in defining the removal consequences associated with a particular conviction, counsel must give "correct advice." *Padilla v. Kentucky*, 559 U.S. 356, 368–69, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010); *accord People v. Kazadi*, 284 P.3d 70, 73 (Colo.App. 2011), *aff'd*, 2012 CO 73, 291 P.3d 16. Conversely, when the law is not succinct and straightforward, "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Padilla*, 559 U.S. at 369, 130 S.Ct. 1473; *accord Kazadi*, 284 P.3d at 73.

### 1. Advice Regarding Criminal Impersonation

¶ 29 In general, any "alien" (i.e., a non-United States citizen or national) convicted of a CIMT is inadmissible, or ineligible to be admitted to the United States. 8 U.S.C. §§ 1101(a)(3), 1182(a)(2)(A)(i)(I) (2012). Although the term "moral turpitude" is not defined by statute, the Tenth Circuit has said that it refers to conduct that is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed between one person and another or between one person and society in general. *Rodriguez–Heredia v. Holder*, 639 F.3d 1264, 1268 (10th Cir.2011). Under this definition, crimes having fraud as an "ingredient" have consistently been regarded as involving moral turpitude. *Id.*

¶ 30 To determine whether a state law crime is a CIMT, courts first analyze the elements of the offense using a so-called "categorical approach." *Dzerekey v. Holder*, 562 Fed.Appx. 659, 662 (10th Cir.2014). Under this approach, courts "determine only whether the statutory definition of the offense is a CIMT" and "do not look to the underlying facts of the conviction." *Id.*

¶ 31 If, however, the statutory definition of the offense at issue sets out one or more elements of the offense in the alternative, and if only one of the alternatives would be a CIMT, then the statute is "divisible" and courts employ a "modified" categorical approach. *Id.* Under this approach, an immigration court may look to the record of conviction to determine whether the crime at issue was a CIMT. *Id.* In cases in which the defendant pleaded guilty, the record of conviction would include a transcript of the plea colloquy, a written plea agreement presented to the court, or a record of comparable findings of fact adopted by the defendant upon entering the plea. *Id.*

¶ 32 For several reasons, we conclude that the postconviction court correctly found that it was not truly clear whether Vicente–Sontay's plea resulted in a conviction for a CIMT.

¶ 33 First, the federal circuits are split as to whether unlawfully using a false Social Security number to gain employment, which is one of the acts at issue here, is a CIMT. *Compare Beltran–Tirado v. I.N.S.*, 213 F.3d 1179, 1184 (9th Cir.2000) (concluding that the use of a false Social Security number to further otherwise legal behavior such as obtaining employment is not a CIMT), *with Marin–Rodriguez v. Holder*, 710 F.3d 734, 740 (7th Cir.2013) (joining several other circuits in declining to follow *Beltran–Tirado*).

¶ 34 Second, the criminal impersonation statute under which Vicente–Sontay was convicted prohibits a person from knowingly assuming a false or fictitious identity or capacity and in such identity or capacity per-

forming an act "with intent to unlawfully gain a benefit for himself ... or another or to injure or defraud another." *See* Ch. 217, sec. 1, § 18–5–113(1)(b)(II), 2011 Colo. Sess. Laws 948 (amending and renumbering the subsection at issue). In our view, this statute is at least arguably divisible because it could be read as proscribing three separate goals of the actor, namely, (1) unlawfully gaining a benefit for himself, herself, or another; injuring another; or (3) defrauding another, with only the last of these goals involving fraud. Indeed, the record shows that immigration judges in Denver have split on the issue of whether the criminal impersonation statute is divisible, thus allowing for the argument that a particular conviction for criminal impersonation was not a conviction of a CIMT. *See Martinez–Osogobio v. Holder,* 373 Fed.Appx. 830, 832 n. 1 (10th Cir.2010) (noting that the immigration judge in that case had found that the defendant's conviction for criminal impersonation did not constitute a conviction for a CIMT, but not reviewing that finding because it had not been appealed). *But see Beltran–Rubio v. Holder,* 565 Fed.Appx. 704, 707 (10th Cir. 2014) (stating that knowingly using a false or fictitious identity or capacity supplies the fraud that renders a violation of the criminal impersonation statute a CIMT). Moreover, at least one immigration judge in Denver has found that a criminal impersonation conviction did not constitute a conviction of a CIMT. *See Martinez–Osogobio,* 373 Fed. Appx. at 832 n. 1.

¶ 35 In light of the foregoing, we agree with the postconviction court that the immigration consequences of Vicente–Sontay's conviction were not succinct, clear, or explicit. As a result, we further agree that plea counsel was only required to advise Vicente–Sontay that his pending criminal charges may have carried a risk of adverse immigration consequences, which is what counsel did. *See Padilla,* 559 U.S. at 369, 130 S.Ct. 1473; *accord Kazadi,* 284 P.3d at 73.

¶ 36 We are not persuaded otherwise by *Beltran–Rubio,* 565 Fed.Appx. at 707–08, on which Vicente–Sontay relies, or by *People v. Garcia,* 2014 COA 85, ¶¶ 15–20, 356 P.3d 913, which followed *Beltran–Rubio.* Although

both opinions concluded that the defendants' criminal impersonation convictions were convictions for CIMTs, both cases were decided after Vicente–Sontay's plea. Thus, neither case alters the fact that there was a split of authority on the issue at the time of Vicente–Sontay's plea, which is the time at which we must assess plea counsel's conduct. *See People v. Price,* 240 P.3d 557, 564–65 (Colo.App. 2010) (noting that a court reviewing counsel's performance should make every effort to reconstruct the circumstances of counsel's challenged conduct and should evaluate the conduct from counsel's perspective at the time).

### 2. Advice Regarding Cancellation of Removal

¶ 37 In certain cases, the United States Attorney General "may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien ... has not been convicted of [among other offenses, a CIMT]." 8 U.S.C. §§ 1229b(b)(1)(C), 1182(a)(2) (2012).

¶ 38 Vicente–Sontay contends that plea counsel was constitutionally ineffective in failing to advise him that his plea would render him ineligible to pursue cancellation of removal sometime in the future. Vicente–Sontay cites no authority, however, nor have we seen any, requiring counsel to advise a defendant on the particulars of cancellation of removal when the defendant's eligibility for such relief is unclear. *Cf. United States v. Aceves,* No. CIV. 10–00738 SOM/LEK, 2011 WL 976706, at *6 (D.Haw. Mar. 17, 2011) (unpublished order) ("Nothing in *Padilla* required [the defendant's attorney] to counsel [the defendant] about cancellation of removal."). To the contrary, in our view, the general rule set forth in *Padilla,* 559 U.S. at 369, 130 S.Ct. 1473, and *Kazadi,* 284 P.3d at 73, applies in this circumstance. Thus, if the immigration consequences are succinct, clear, and explicit, then counsel must give correct advice. If, however, the law is not succinct, clear, and explicit, then counsel need only advise that the pending charges may carry a risk of adverse immigration consequences.

¶ 39 *People v. Burgos,* 37 Misc.3d 394, 950 N.Y.S.2d 428 (N.Y.Sup.Ct.2012), on which Vicente–Sontay relies, is not to the contrary. As Vicente–Sontay observes, the *Burgos* court noted that the defendant's conviction had deprived him of the ability to seek cancellation of removal. *See id.* at 441–42. The court's finding of ineffective assistance, however, turned on the facts that (1) defense counsel had failed to advise the defendant of *any* of the immigration consequences of his plea and (2) it had been "truly clear and unambiguous" for decades prior to the plea that a conviction like defendant's would render an undocumented immigrant deportable without any recourse to adjustment of immigration status to that of a legal permanent resident. *Id.* at 436, 441, 445.

¶ 40 Here, in contrast, the immigration consequences of Vicente–Sontay's plea, including the effect of a conviction on Vicente–Sontay's eligibility for cancellation of removal, were not truly clear. Accordingly, plea counsel properly advised Vicente–Sontay that his conviction might carry a risk of adverse immigration consequences. *Padilla,* 559 U.S. at 369, 130 S.Ct. 1473; *Kazadi,* 284 P.3d at 73.

### 3. Prejudice

¶ 41 Finally, the record amply supports the postconviction court's finding that Vicente–Sontay was not prejudiced by the advice that he received from his counsel regarding the immigration consequences of his plea. Specifically, the record shows that at the time of his plea, Vicente–Sontay was (1) focused on remaining out of custody and eliminating his father's obligations on the bond and (2) hoping that if he was able to proceed to probation without drawing the attention of HSI, then he might avoid the imminent risk of deportation. Indeed, he had achieved these goals, at least until he violated the terms of his probation.

¶ 42 Accordingly, we perceive no error in the postconviction court's finding that the possibility of discretionary relief from removal would have been insignificant to Vicente–Sontay in deciding whether to accept a plea.

### D. K'iche Interpreter

¶ 43 Vicente–Sontay further contends that the postconviction court erred in rejecting his claim that plea counsel was constitutionally ineffective in failing to obtain a K'iche interpreter for him.

¶ 44 "When a defendant does not speak or understand English, using an interpreter is 'crucial to safeguarding the fundamental fairness of the trial.' Without an interpreter, such a defendant would effectively be denied various constitutional rights, including the right to confront witnesses and the right to effective assistance of counsel." *People v. Chavez,* 2012 COA 61, ¶ 14, 318 P.3d 22, 26 (quoting *People v. Avila,* 797 P.2d 804, 806 (Colo.App.1990)).

¶ 45 Although the right to an interpreter implicates other due process rights, it is not absolute. *Id.* at ¶ 17, 318 P.3d at 26. For example, there is no right to an interpreter if a foreign-born defendant speaks fluent English and is completely aware of the proceedings. *Id.* at ¶ 17 n. 1, 318 P.3d at 26 n. 1. In light of the foregoing, courts have rejected ineffective assistance claims based on a lawyer's failure to request an interpreter when the defendant could not point to specific instances in the record showing an inability to understand the proceedings and when the defendant was able to participate meaningfully in such proceedings. *See, e.g., Ex parte Cockrell,* 424 S.W.3d 543, 553 n. 13 (Tex.Crim.App.2014) (collecting cases). Similarly, courts have found counsel's conduct to be adequate, despite the failure to request an interpreter, when the record reflected that counsel could reasonably have been unaware of the defendant's language and comprehension difficulties. *See id.* at 552 (collecting cases); *see also Valladares v. United States,* 871 F.2d 1564, 1566 (11th Cir.1989) ("To allow a defendant to remain silent throughout the trial and then, upon being found guilty, to assert a claim of inadequate translation would be an open invitation to abuse.").

¶ 46 Although no Colorado case appears to have squarely addressed this issue, Colorado courts considering analogous questions have reached similar conclusions. *See, e.g., People v. Rodriguez,* 914 P.2d 230, 295 (Colo.1996)

(concluding that trial counsel's alleged failure to investigate or present mitigating evidence did not constitute ineffective assistance when the essential and foundational information required to trigger such an investigation was withheld from counsel by the defendant himself); *see also Chavez*, 318 P.3d at 27 ("If an interpreter is not requested and the record indicates that the defendant did not have trouble communicating, a court's failure to appoint an interpreter is not plain error.").

¶ 47 Here, for several reasons, we conclude that the postconviction court did not err in rejecting Vicente–Sontay's claim of ineffective assistance based on counsel's not obtaining a K'iche interpreter for him.

¶ 48 First, as the court found, with ample record support, Vicente–Sontay spoke sufficient Spanish to engage in meaningful communications, through Spanish interpreters, with his plea counsel and to navigate the judicial system. *See Chavez*, ¶ 17 n. 1, 318 P.3d at 26 n.1; *Cockrell*, 424 S.W.3d at 553 n. 13. For example, two of Vicente–Sontay's probation officers and an HSI agent, all of whom were proficient in Spanish, testified that they had no difficulty communicating with Vicente–Sontay in Spanish and no concerns regarding his ability to understand them. Similarly, Vicente–Sontay appeared in court with Spanish interpreters numerous times, and neither he nor any of the interpreters indicated any communication difficulties. To the contrary, Vicente–Sontay's answers to questions posed to him were consistently responsive and appropriate.

¶ 49 Second, as the postconviction court observed, "[g]iven the evidence that Mr. Vicente–Sontay understood the substance of his conversations with trial counsel and his answers during the providency hearing, trial counsel had no duty to inquire further as to whether he sufficiently understood Spanish." *See Cockrell*, 424 S.W.3d at 552.

¶ 50 Third, we again perceive no error in the court's conclusion that Vicente–Sontay failed to establish the requisite prejudice. As the postconviction court found, with ample record support, the alleged language barrier, if one existed at all, did not impact Vicente–Sontay's decision to plead guilty because he conveyed an accurate understanding of his

options to plea counsel, weighed those options, and elected to proceed with the plea agreement. And as the People observe, Vicente–Sontay has not demonstrated why the presence of a K'iche interpreter, rather than a Spanish interpreter, would have caused him to insist on going to trial rather than accepting a guilty plea.

## IV. Knowing, Voluntary, and Intelligent Plea

▮▮▮ ¶ 51 Finally, Vicente–Sontay contends that the postconviction court erred in denying his claim that because he did not speak or understand Spanish sufficiently, his plea was not knowing, voluntary, and intelligent. We are not persuaded.

▮▮▮ ¶ 52 Whether a guilty plea is knowing, voluntary, and intelligent is a mixed question of fact and law. *Sanchez–Martinez v. People*, 250 P.3d 1248, 1254 (Colo.2011). We defer to the postconviction court's findings of fact unless they are so clearly erroneous as to find no support in the record. *Id.* We review questions of law de novo. *Id.*

> In the case of a non-English speaking defendant, providing an interpreter at the [Crim. P.] 11 hearing can be important to ensuring that a guilty plea is knowing, voluntary, and intelligent. When a defendant claims that his lack of proficiency in English renders his guilty plea unconstitutional, courts engage in a fact-intensive inquiry to determine the effect of the language barrier on his ability to enter a knowing, voluntary, intelligent plea. A court may consider many factors, such as the presence of an interpreter, whether the defendant indicated that he understood the constitutional rights he waived by pleading guilty, whether the plea agreement was explained to him, and whether he was represented by bilingual counsel. Ultimately, the particular facts of the case will shape the court's inquiry into whether the guilty plea was entered knowingly, voluntarily, and intelligently.

*Id.* at 1255–56 (citations omitted).

¶ 53 Here, as we have discussed, the postconviction court found, with ample record support, that Vicente–Sontay spoke sufficient

Spanish to engage in meaningful communications with his plea counsel and to navigate the judicial system.

¶ 54 Accordingly, we agree with the post-conviction court's conclusion that Vicente–Sontay's plea was knowing, voluntary, and intelligent.

## V.   Conclusion

¶ 55 For these reasons, the order is affirmed.

Casebolt and Román, JJ., concur.