23CA1200 Peo v Richter 01-23-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1200
Boulder County District Court No. 20CR300
Honorable Nancy W. Salomone, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

John Conrad Richter,

Defendant-Appellant.

---

ORDER AFFIRMED

Division VII
Opinion by JUDGE LIPINSKY
Johnson and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 23, 2025

---

Philip J. Weiser, Attorney General, William G. Kozeliski, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

H. Craig Skinner, Denver, Colorado, for Defendant-Appellant

¶ 1      John Conrad Richter appeals the postconviction court's order denying his Crim. P. 35(c) motion (the motion) without a hearing. We affirm.

## I.      Background

¶ 2      The following facts appear in the documents concerning Richter's arrest and the presentence investigation report in his case.

¶ 3      The victim — Richter's then-girlfriend — reported that, while highly intoxicated one night, Richter punched a hole in a wall in her apartment and broke a glass jar on the floor.  The victim told Richter to leave.  He did so but returned shortly thereafter and demanded to be let inside.  When the victim refused to let him in, Richter broke the door open and entered the apartment.

¶ 4      Richter took the victim's phone, so she could not call for help. He then repeatedly hit her, punched her in the face, and choked her until she lost consciousness.  Eventually, the victim ran barefoot out of the apartment and into an alleyway, wearing only a t-shirt and underwear.  Richter chased her with a broom, struck her with it "as hard as he could," and demanded that she return to the apartment.

¶ 5     Once back in the apartment, Richter grabbed a knife and held it to the victim's back.  He cut the victim multiple times on her upper thigh before he cut himself on his left arm.  Richter eventually stopped his aggressive behavior and left the victim's apartment in the morning.

¶ 6     After Richter left, the victim contacted Richter's father via FaceTime and told him about the incident and her injuries.  Richter's father saw on the FaceTime video that the victim had facial and neck injuries.  He contacted the police, who responded to the victim's apartment.  Richter's father reported that, while speaking with Richter on the phone, Richter told him that he "was aware of what happened between him and [the victim] and that he had stabbed himself with a knife in the arm because of it."

¶ 7     The responding officers noted that the victim's apartment had been cleaned before their arrival, although they noted broken glass in a trash can.  The officers saw "multiple holes in walls throughout the apartment as well as extensive damage to the door and doorframe of the apartment."  They photographed the damage to the apartment.

¶ 8     The officers reported "it was apparent that [the victim] had been injured based on the red and purple marks on her neck and face." The victim was transported to a hospital for evaluation. Detectives who saw her at the hospital noted numerous injuries throughout her body. One detective "observed injuries to [the victim's] neck that were consistent with strangulation which included abrasions near both collar bones and under her chin." Photos documented the victim's injuries.

¶ 9     In addition, the police obtained a security video from one of the victim's neighbors. The video showed the interaction between Richter and the victim outside her apartment on the night of the incident. Officers who reviewed the video said it depicted the victim running barefoot out the front door and into an alleyway, wearing only a t-shirt and underwear, and Richter chasing the victim while holding a broom and striking the victim on her right side while demanding that she return to the apartment. After the victim returned to the apartment, the security video recorded the voice of a female screaming for help and repeatedly saying, "No."

¶ 10    The victim's upstairs neighbor reported that, on the night of the incident, she was awakened by loud noises coming from the

victim's apartment.  The neighbor told police that she heard slamming doors and yelling.  The neighbor then heard Richter leave the apartment and, upon his return, heard him "pounding on the door" and demanding to be let in.  After the victim refused to let Richter in, the neighbor heard "slamming, hole punching[,] and glass shattering."

¶ 11     The neighbor also provided the police with four audio clips she recorded during the incident.  Detectives described the contents of the recordings as follows:

> [I]n the first recording, detectives could hear a male voice saying, "Open the goddamn door[."] The female responded but detectives could not hear what she was saying.  The male responded and stated, "I'm not going to fucking hurt you."  The female again responded but detectives could not make out what she said.  The male then stated, "Open the fucking door. . . . You have five seconds." Detectives then heard extremely loud banging noises and [Richter] again stated, "Open the door[."]  After this, there was an even louder banging noise which sounded as if the door was busted down.  There was a lot of noise afterwards and detectives could not make out what the noise was from.  The recording then ended.
>
> The second recording had a lot of banging noises followed by a female screaming, shouting[,] and crying out.

4

The third recording started with a female voice saying, "Get out" and continued with more screaming and shouting from a female voice. It was difficult to hear what was being said but it seemed as if a physical struggle was occurring. At times, the female is heard saying, "No[,"] "Please[,]" and "Don't do it[."] A male's voice was also heard in the recording, but it was unclear what he said.

The fourth audio recording started with a female screaming and pleading. The female was heard screaming, "Please!" and the rest was inaudible. It sounded like the female was screaming but her mouth seemed to be covered or muffled by something.

¶ 12    When taking Richter into custody, officers observed cuts and puncture wounds on his left arm. At a hospital, Richter told doctors that he had cut himself with a knife. Officers photographed Richter's injuries. Richter says in his opening brief that he told police "he was a 'monster' and that his actions were 'horrendous.'" Richter claimed to have no memory of the incident.

¶ 13    Richter was charged with first degree assault, first degree burglary, two counts of second degree assault, criminal extortion, two counts of menacing, nine counts of third degree assault, criminal mischief, obstruction of telephone or telegraph service, harassment, and five crime of violence sentence enhancer counts.

¶ 14    Before trial, the parties reached a plea agreement, under which Richter pleaded guilty to the original counts of second degree assault and third degree assault and to added counts of second degree burglary and second degree assault (domestic violence). Richter waived the establishment of a factual basis to support his guilty pleas.  In exchange, the prosecution moved to dismiss the remaining counts against Richter and stipulated to an aggregate six-year sentence in the custody of the Department of Corrections. Richter signed the written plea agreement, in which he expressly waived his right "to have a sentence reconsideration."  The trial court accepted Richter's guilty pleas and imposed the stipulated sentence.

¶ 15    Richter filed the motion one year later.  In the motion, he raised multiple ineffective assistance of counsel claims.  The postconviction court denied the motion without a hearing in a comprehensive written order.  In the order, the court primarily found that, even if plea counsel's representation was deficient, Richter failed to establish that the deficient representation prejudiced him.  Richter appeals the order denying the motion.

## II.    Legal Authority and Standard of Review

¶ 16    "A criminal defendant is constitutionally entitled to effective assistance from [the defendant's] counsel." *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003).  The right to effective assistance of counsel encompasses counsel's assistance during the plea bargaining process.  *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Missouri v. Frye*, 566 U.S. 134, 144 (2012).  "[A] defendant may challenge [a] guilty plea on the grounds of ineffective assistance of counsel when that challenge goes to the issue of whether the plea was knowingly, voluntarily, and intelligently entered." *People v. Stovall*, 2012 COA 7M, ¶ 13, 284 P.3d 151, 154.

¶ 17    To prevail on an ineffective assistance of counsel claim, "a defendant must prove that 1) counsel's performance was deficient and 2) the deficient performance prejudiced the defense." *Dunlap v. People*, 173 P.3d 1054, 1062 (Colo. 2007).  The failure to prove either of these two prongs is fatal to an ineffective assistance claim. *People v. Thompson*, 2020 COA 117, ¶ 50, 485 P.3d 566, 574.

¶ 18    To establish deficient performance, a defendant must prove that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88

(1984); *see also Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (applying the *Strickland* test to ineffective assistance of counsel claims in cases involving guilty pleas). "[J]udicial scrutiny of counsel's performance must be highly deferential, evaluate particular acts and omissions from counsel's perspective at the time, and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Ardolino*, 69 P.3d at 76.

¶ 19    To establish prejudice, a defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

¶ 20    "To prove prejudice in the context of a guilty plea, the defendant must establish a reasonable probability that but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *People v. Vicente-Sontay*, 2014 COA 175, ¶ 20, 361 P.3d 1046, 1051. Further, the defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v.*

*Kentucky*, 559 U.S. 356, 372 (2010); *see also People v. Finney*, 2012 COA 38, ¶ 71, 328 P.3d 205, 219, *aff'd*, 2014 CO 38, 325 P.3d 1044.

¶ 21    We review de novo a trial court's summary denial of a Crim. P. 35(c) motion. *People v. Cali*, 2020 CO 20, ¶ 14, 459 P.3d 516, 519. A defendant need not set forth the evidentiary support for the allegations in a Crim. P. 35 motion, but instead need only assert facts that, if true, would provide a basis for relief. *White v. Denver Dist. Ct.*, 766 P.2d 632, 635 (Colo. 1988). A court may deny a Crim. P. 35(c) motion without an evidentiary hearing only where the motion, files, and record clearly establish that the defendant's allegations are without merit and do not warrant relief. *Ardolino*, 69 P.3d at 77. Thus, "[t]he denial of a claim of ineffective assistance of counsel without a hearing is justified if, but only if, the existing record establishes that the defendant's allegations, even if proven true, would fail to establish either constitutionally deficient performance or prejudice." *People v. Chavez-Torres*, 2016 COA 169M, ¶ 31, 410 P.3d 690, 696, *aff'd*, 2019 CO 59, 442 P.3d 843.

### III. Analysis

¶ 22    In the motion, Richter asserted various allegations regarding plea counsel's deficient representation. However, he does not clearly identify how the alleged deficient representation caused him prejudice.

¶ 23    We construe Richter's arguments as asserting that (1) plea counsel was so deficient that Richter was actually or constructively denied the assistance of counsel altogether; (2) plea counsel's deficiencies rendered the proceeding fundamentally unfair, which either satisfied *Strickland*'s prejudice prong or constituted structural error requiring automatic reversal; and (3) he established prejudice because his allegations, if true, demonstrated that, but for plea counsel's deficiencies, the result of the proceeding would have been different. Accepting as true Richter's allegations of deficient performance, we address and reject each of his prejudice arguments.

¶ 24    First, we conclude that Richter failed to allege facts that, if true, would establish that plea counsel's deficiencies actually or constructively denied him the assistance of counsel.

¶ 25   In some contexts, the prejudice resulting from a counsel's deficient performance is presumed. *Strickland*, 466 U.S. at 691. As relevant here, "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." *Id.* at 692. Under such circumstances, the *Strickland* prejudice inquiry does not apply and the defendant is not required to make an additional showing of prejudice. *People v. Thomas*, 2015 COA 17, ¶ 12, 411 P.3d 124, 127; *People v. Robles*, 74 P.3d 437, 439 (Colo. App. 2003).

¶ 26   "[A] court may presume prejudice if counsel '*entirely* fails to subject the prosecution's case to *meaningful* adversarial testing.'" *A.R. v. D.R.*, 2020 CO 10, ¶ 66, 456 P.3d 1266, 1281 (quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984)). However, "this presumption of prejudice applies only in relatively narrow circumstances, as, for example, when counsel was not made available, was prohibited by the trial court from participating in a critical aspect of the proceeding, or was acting under a conflict of interest." *Id.*; *see also Ybanez v. People*, 2018 CO 16, ¶ 25, 413 P.3d 700, 706; *Thomas*, ¶ 12, 411 P.3d at 127.

11

¶ 27     The information in the appellate record demonstrates that, even if plea counsel's performance was deficient, Richter was not actually or constructively denied the assistance of counsel altogether.  Significantly, as the postconviction court noted, plea counsel negotiated a plea agreement that required the dismissal of numerous felony charges pending against Richter.  If Richter rejected the plea agreement and was convicted on those charges, he would have faced a substantially longer prison sentence than the six-year sentence specified in the plea agreement.

¶ 28     Accordingly, we reject Richter's claim that he was actually or constructively denied the assistance of counsel.  Richter fails to establish that plea counsel's performance, viewed in its entirety, fell within the narrow circumstances that warrant the presumption of prejudice.  *See Bell v. Cone*, 535 U.S. 685, 697 (2002) (rejecting the defendant's presumption of prejudice argument because counsel's failures occurred at specific points during a proceeding rather than throughout the proceeding as a whole); *Cronic*, 466 U.S. at 659 (holding there can be no presumption of prejudice unless the denial of counsel is "complete" and counsel "entirely" fails to subject the prosecution's case to testing).

¶ 29    Second, we are not persuaded that Richter's assertions of plea counsel's deficient performance, even if true, established that the proceeding was fundamentally unfair such that he was entitled to postconviction relief.

¶ 30    In *Weaver v. Massachusetts*, 582 U.S. 286 (2017), the United States Supreme Court addressed whether a defendant must demonstrate prejudice when the defendant argues in a postconviction motion that trial counsel was ineffective by not objecting to a structural error — specifically, the trial court's closure of the courtroom to the public. *Id.* at 290, 293-94, 299. The Court initially acknowledged that, as relevant here, "an error has been deemed structural if the error always results in fundamental unfairness" and that structural errors are not subject to a prejudice inquiry and require automatic reversal. *Id.* at 294-96, 299.

¶ 31    The Court then considered the effect of raising a structural error argument through a postconviction ineffective assistance claim and the petitioner's related interpretation of *Strickland* that, "even if there is no showing of a reasonable probability of a different outcome, relief still must be granted if the convicted person shows

that attorney errors rendered the trial fundamentally unfair." *Id.* at 300.

¶ 32     The Court did not adopt this reading of *Strickland* but said that, "[f]or the analytical purposes of this case," it would "assume that petitioner's interpretation of *Strickland* is the correct one." *Id.* The Court then concluded that, because "not every public-trial violation will in fact lead to a fundamentally unfair trial," when a defendant "raises a public-trial violation via an ineffective-assistance-of-counsel claim, *Strickland* prejudice is not shown automatically." *Id.* at 300-01. Rather, "[t]he burden is on the defendant to show either a reasonable probability of a different outcome in his or her case or, as the Court has assumed for these purposes, to show that the particular public-trial violation was so serious as to render his or her trial fundamentally unfair." *Id.* at 301 (citation omitted).

¶ 33     Richter argues that, under *Weaver,* "[a]n attorney's deficient performance is prejudicial when counsel's errors rendered the trial process fundamentally unfair — even if those errors did not have a probable effect on the trial outcome." Thus, Richter claims that plea counsel's deficient performance constituted structural error or

14

entitled him to a presumption of prejudice because Richter "was encouraged to accept an offer based on a very limited and narrow version of the facts" and "[c]ounsel's actions and inactions resulted in a fundamentally unfair process."

¶ 34     *Weaver* is distinguishable for the following reasons:

- In that case, the Court expressly limited its holding to public trial violations raised in ineffective assistance claims.  *See id.* at 299 ("The Court now turns to the proper remedy for addressing the violation of a structural right, and in particular the right to a public trial.").

- As noted, the Court rejected the petitioner's interpretation of *Strickland.  See id.* at 300-01 ("[W]hen a defendant raises a public-trial violation via an ineffective-assistance-of-counsel claim, *Strickland* prejudice is not shown automatically. Instead, the burden is on the defendant to show either a reasonable probability of a different outcome in his or her case" or "that the particular public-trial violation was so serious as to render his or her trial fundamentally unfair.").

- Unlike the defendant in *Weaver*, Richter is not challenging plea counsel's failure to object to a structural error but, instead, claims that *plea counsel's performance itself* resulted in structural error because it was so deficient as to render the proceeding fundamentally unfair.

Accordingly, *Weaver* does not support Richter's assertion that the ineffective assistance of counsel itself can constitute structural error.

¶ 35    Not only does Richter's argument premised on *Weaver* lack merit, but we agree with the postconviction court that Richter's bald allegations were insufficient to establish that plea counsel's performance rendered the proceeding fundamentally unfair. *See People v. Romero*, 2015 COA 7, ¶ 53, 411 P.3d 897, 906 (declining to address an argument that the defendant presented in a perfunctory and conclusory manner).

¶ 36    Third, we conclude that Richter failed to allege facts that, if true, would establish a reasonable probability that, but for plea counsel's alleged deficiencies, the result of the proceeding would have been different.

¶ 37     In the motion, Richter argued that his counsel provided deficient performance by failing to (1) sufficiently investigate the case to discover witnesses whose testimony would have undermined the victim's credibility; (2) file pretrial motions to exclude certain evidence; (3) investigate Richter's theory that he had been unknowingly drugged before the incident; (4) investigate how the death of one of the responding officers impacted his case; (5) adequately explain the plea deal to Richter; (6) explain the consequences of waiving his Crim. P. 35(b) right to seek a sentence reconsideration in light of the COVID-19 pandemic; and (7) retain an expert to review the photographs of the victim's injuries and opine on the cause of her injuries.

¶ 38     In its order denying the motion, the postconviction court held that Richter did not establish that any of these asserted errors prejudiced him.  Specifically, the court found that Richter failed to explain (1) why the undiscovered credibility testimony would have been admissible at trial or would have significantly undermined the prosecution's case, which included the inculpatory video and audio recordings, photographs of the victim's injuries and the damage to the apartment, and Richter's inculpatory statements; (2) the factual

17

or legal bases for filing a suppression motion and why a successful suppression motion would have affected the outcome of the proceeding; (3) why the death of the officer would have called into question the warrants he authored, why a successful challenge to the warrants would have affected the outcome of the proceeding, or why the officer's testimony was so unique that the loss of the testimony would have affected a trial of the charges against Richter; (4) how Richter had been inadequately advised of the plea agreement before pleading guilty; (5) why it would have been rational for him to reject a plea offer for a stipulated six-year prison sentence and proceed to trial on multiple felony counts to maintain his postconviction right to apply for a sentence reconsideration; and (6) why a favorable expert opinion on the cause of the victim's injuries would have undermined the strength of the prosecution's case.

¶ 39     We agree with the postconviction court that Richter did not present sufficient arguments that, if meritorious, would establish a reasonable probability that, but for plea counsel's deficient performance, Richter would have rejected the plea offer and proceeded to trial and that a decision to do so would have been

18

rational. *See Romero*, ¶ 53, 411 P.3d at 906; *see also People v. Corson*, 2016 CO 33, ¶¶ 35, 42-43, 379 P.3d 288, 295, 297 (holding that, "[i]n assessing whether a defendant would elect to plead guilty or go to trial, we have considered the comparative sentencing exposure between a proffered plea bargain and conviction after trial," and concluding that the defendant did not show a reasonable probability that he would have rejected the plea offer and proceeded to trial because the plea agreement provided substantial benefits to him and he "faced a daunting downside risk at trial"); *People v. Sifuentes*, 2017 COA 48M, ¶ 21, 410 P.3d 730, 736 ("Various factors should inform a court's analysis of whether a decision to reject the guilty plea would have been rational," including "the attractiveness of the plea deal and the risks of going to trial.").

¶ 40      Richter's bald assertion of prejudice resulting from counsel's deficient performance is insufficient. *See People v. Villanueva*, 2016 COA 70, ¶ 68, 374 P.3d 535, 549 (A "conclusory allegation is insufficient to establish prejudice under *Strickland*."); *see also People v. Delgado*, 2019 COA 55, ¶ 8, 442 P.3d 1021, 1024 ("[A] court may deny [a Crim. P. 35(c)] motion without a hearing . . . if the claims are bare and conclusory in nature and lack supporting

factual allegations."); *People v. Venzor*, 121 P.3d 260, 262 (Colo. App. 2005) (same). Further, we decline to address Richter's argument — asserted for the first time on appeal — that plea counsel's representation was deficient because plea counsel failed to investigate his assertion that the victim carved her initials into his chest. *See People v. Goldman*, 923 P.2d 374, 375 (Colo. App. 1996) (holding that allegations not raised in a Crim. P. 35(c) motion and thus not ruled on by the postconviction court are not properly before the Court of Appeals).

¶ 41     We note that the postconviction court did not address Richter's assertion that plea counsel was ineffective by failing to investigate his theory that he had been unknowingly drugged before the incident. But Richter failed to allege facts that, if true, would establish what such an investigation would have revealed and why the result of such an investigation would have altered the outcome of the proceeding. *See People v. Hartkemeyer*, 843 P.2d 92, 92 (Colo. App. 1992) (holding that a trial court's failure to make findings of fact or conclusions of law in denying a Crim. P. 35(c) motion does not require reversal if the error was harmless); *see also People v. Zuniga*, 80 P.3d 965, 973 (Colo. App. 2003) (rejecting the

defendant's claim that counsel was ineffective for conducting an inadequate investigation because he did "not explain[] what additional investigation counsel should have done, what the results of those efforts would have been, and how they would have affected the outcome of the case").

¶ 42    Finally, Richter argues that the postconviction court "erred by analyzing each allegation separately" because "[t]he allegations, seen as a whole, indicate that plea counsel's representation was entirely inadequate and therefore in violation of [his] constitutional right to competent counsel." But he presents no argument or authority to support the proposition that the court should have evaluated his claims collectively. *See Romero*, ¶ 53, 411 P.3d at 906. Indeed, Richter did not assert a cumulative error claim in the motion. *See Goldman*, 923 P.2d at 375; *see also People v. Smith*, 2024 CO 3, ¶¶ 7-8, 19, 541 P.3d 1191, 1194-95.

## IV.    Disposition

¶ 43    The order is affirmed.

JUDGE JOHNSON and JUDGE MOULTIE concur.

21